## SHAWNEE GAS & ELECTRIC CO. v. CORPORATION COMMISSION OF OKLAHOMA.

No. 3795.    Opinion Filed February 11, 1913.

(130 Pac. 127.)

GAS — Supply to Private Consumers — Regulation of Charges.    Section 18, art. 9, of the Constitution does not confer upon the Corporation Commission jurisdiction and power to prescribe the rates and charges for service to be rendered by a gas company furnishing gas within the limits of a city under franchise from the city, and that, too, whether the city has authority conferred upon it by Comp. Laws 1909, sec. 693, to regulate the charges therefor or not. Neither is such jurisdiction conferred by Comp. Laws 1909, sec. 8812.

(Syllabus by the Court.)

Application by the Shawnee Gas & Electric Company against the Corporation Commission of Oklahoma for writ of prohibition. Writ granted.

*Flynn, Chambers, Lowe & Richardson* and *Edward Howell,* for petitioner.

*Chas. West,* Atty. Gen., *Chas. L. Moore,* Asst. Atty. Gen., and *E. C. Patton,* for defendant.

TURNER, J. This is an application for a writ of prohibition. From the petition and return to the alternative writ it appears that on September 28, 1906, the Shawnee Gas & Electric Company was granted a franchise by the city of Shawnee, for a period of 21 years, to furnish natural gas to the city and its inhabitants at a rate fixed by the city of not to exceed 25 cents per thousand cubic feet, with a minimum monthly charge of 50 cents; that said franchise was accepted, and the company proceeded to lay its mains, build its plant, and avail itself of the privileges granted by the franchise, which it did at rates not exceeding the rates therein provided, confining its business under the charter to within the limits of said city; that thereafter came Shawnee City Waterworks and persons resident in the city and customers of petitioner, Shawnee Gas & Electric Company, and filed their several complaints with the Corporation Commission, representing thereto that the charges made by petitioner for natural gas were excessive, and asked the commission to compel said company to reduce its rates and fix the price to be charged by said company at not to exceed 35 cents per thousand cubic feet, which the commission did, on December 13, 1910, after hearing duly had, and issued order No. 409, purporting to fix said rates within said city on a schedule lower than those fixed in said franchise, and at not exceeding 35 cents per thousand cubic feet, and when the commission sought to execute the same, this proceeding was commenced.

It is contended by petitioner that said order is void as beyond the power of the commission to make. This for the reason, it is urged, that petitioner is a public service corporation; that the city had the governmental power to fix said rates, which it did in section 2 of the charter, pursuant to legislative grant contained in Comp. Laws 1909, sec. 693, then, and conceded yet to be, in force, which reads:

"The council may provide for, and regulate the lighting of the streets, the erection of lamp posts, and the council shall have the power to make contracts with, and authorize any person, company or association to erect gas or electric works in said city and give such person, company or association the privilege of furnishing gas or electricity to light the streets, alleys and lanes of said city for any length of time, not exceeding twenty-one years. But no such grant shall be so conditioned as to prevent the council from granting to other persons, or companies, or corporations, the right to use the streets for lighting purposes; all such grants shall be subject at all times to reasonable regulation by ordinance, as to the use of streets and prices to be paid for gas or light."

—And which, having been thus conferred and exercised prior to the adoption of the Constitution, the right thus fixed falls within the protection of the proviso in section 18, art. 9, thereof. That petitioner is a public service corporation is conceded, but whether the city at the time of the granting of the franchise relied on was vested, in virtue of section 693, *supra,* with power to fix said rate, it is unnecessary to decide for the reason, that, whether it was or was not, if the Corporation Commission was without power derived from constitutional grant to regulate petitioner's rates, the order complained of purporting so to do is void for want of jurisdiction, and this writ should run.

This sends us first to its general grant of power to fix rates and charges for services, which is found in section 18, art. 9, *supra,* and which, so far as the same affects the question here involved, reads:

"The commission shall have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this state, in matters relating to the performance of their public duties and their charges therefor and of correcting abuses and preventing unjust discrimination, and extortion by such companies; and to that end the commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish. and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations and requirements, the commission

may, from time to time alter or amend. * * * The authority of the commission (subject to review on appeal as hereinafter provided), to prescribe rates, charges and classifications of traffic, for transportation and transmission companies, shall, subject to regulation by law, be paramount; but its authority to prescribe any other rule, regulation or requirement, for corporations or other persons, shall be subject to the superior authority of the Legislature to legislate thereon by general laws. Provided, however, that nothing in this section shall impair the rights which have heretofore been or may hereafter be conferred by law upon the authority of any city, town or county to prescribe rules, regulations, or rates of charges to be observed by any public service corporation in connection with any services performed by it under a municipal or county franchise granted by such city, town or county, so far as such services may be wholly within the limit of the city, town, or county granting the franchise."

When the granting clause, *supra,* of said section says, as it does, that the commission shall have the power of "supervising, regulating and controlling all transportation and transmission companies doing business in the state, in matters relating to the performance of their public duties and their charges therefor," it had no reference to gas companies and hence vested the Corporation Commission with no jurisdiction over petitioner in the matter of regulating its rates, or for any other purpose. This for the reason that petitioner was neither a transportation nor a transmission company within the definition of such companies laid down in article 9, sec. 34. No further grant of power is made down to the proviso in said section; the sole further intent down to that point being to make the power already granted over those companies subject to something, which is done by adding that the power "to prescribe rates for transportation and transmission companies, shall, subject to regulation by law, be paramount but" that "its authority to prescribe any other rule, regulation or requirement for corporations or other persons [no such authority is granted here] shall be subject to the general authority of the Legislature to legislate thereon by general laws." So much for the enacting clause, comprehensively called its purview. Within that purview nothing is said indicating a grant of power to the Corporation Commission over any kind of a public service corporation for any purpose, and hence petitioner, not

being within the purview, was not intended to be included within its terms and placed within the jurisdiction of the commission for any purpose.

But next we come to the proviso. 2 Lewis, Suth. on Stat. Con., sec. 352, says:

"The proper function of a proviso being to limit the language of the Legislature, it will not be deemed intended from doubtful words to enlarge or extend the act or the provision on which it is engrafted. Where it follows and restricts an enacting clause generally in its scope and language, it is to be strictly construed and limited to objects fairly within its terms"—citing authority.

Now, if the intent of this proviso is to limit the preceding language under construction, which we have said has no application to petitioner, how can it with reason be so construed as to include petitioner within its terms? Why, rather, is it not to be strictly construed, as required by the rule, *supra,* so as to exclude from the general operation of the grant such corporations only as are fairly within its terms? Thus construed, the proviso could not exclude petitioner from the general operation of the grant contained in the enacting clause, for the reason that petitioner was not therein included. In the volume last cited, at page 675, the author says that Story, J., " * * * said that he was led to the general rule of law which has always prevailed, and become consecrated as almost a maxim in the interpretation of statutes, that 'When the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is strictly construed, and takes no case out of the enacting clause which does not fall within its terms.' "

We are therefore of opinion that gas companies are not within the purview of the enactments under construction, but, as to the fixing of their rates, were purposely left to be dealt with by the Legislature. In other words, all that part of the section within said proviso inhibits a construction of said section that will confer upon the commission authority to fix rates for a gas company furnishing gas within the limits of a city under franchise from the city, and that, too, whether the city has authority conferred upon it by Comp. Laws 1909, sec. 693, to regulate rates and charges therefor or not. This construction does not leave

this proviso without a subject upon which to operate. For what of the numerous street railway and telephone lines, and perhaps other public service corporations, whose rates had been fixed by similar franchises granted by the cities, towns, and counties throughout the state prior to the adoption of the Constitution? These, it would seem, fall within the protection of the proviso, but not the petitioner company for the reasons stated.

As, to the remaining questions for determination, we quote from an unpublished opinion of Hayes, J.:

"Since said section 18 does not confer the power upon the commission to regulate and prescribe the rate to be observed by gas companies and other public service corporations, other than transportation and transmission companies, the commission has no such authority, as is contended in this case by the appellees, unless the same may be found in some other section of the Constitution, or in some statute. Section 18, art. 9, of the Constitution authorizes the Legislature to confer upon the commission additional authority to that conferred by the Constitution itself, in the following language: 'The commission may be vested with such additional powers, and charged with such other duties (not inconsistent with this Constitution) as may be prescribed by law, in connection with the visitation, regulation, or control of corporations, or with the prescribing and enforcing of rates and charges to be observed in the conduct of any business where the state has the right to prescribe the rates and charges in connection therewith. * * *' But this section does not in itself confer any additional power upon the commission relative to prescribing and regulating rates and charges for public service corporations. No other sections of the Constitution have been relied upon by appellees as conferring jurisdiction upon the commission in this case, and we know of none that does so.

"Appellees contend, however, that such is the effect of section 8812, Comp. Laws 1909, which reads as follows: 'Whenever any business, by reason of its nature, extent, or the existence of a virtual monopoly therein, is such that the public must use the same, or its service, or the consideration by it given or taken or offered, or the commodities bought or sold herein are offered or taken by purchase or sale in such manner as to make it of public consequence, or to affect the community at large as to supply, demand, or price or rate thereof, or said business is conducted in violation of the first section of this act, said business is a public business, and subject to be controlled by the state,

by the Corporation Commission or by an action in any district court of the state, as to all of its practices, prices, rates and charges, and it is hereby declared to be the duty of any person, firm, or corporation engaged in any public business to render its services and offer its commodities or either upon reasonable terms without discrimination and adequately to needs of the public, considering the facilities of said business.' The foregoing statute constitutes section 13 of an act of the First Legislature, approved June 10, 1908, entitled, 'An act to define a trust, monopoly, unlawful combination in restraint of trade; to provide civil and criminal penalties and punishment for violation thereof and damages thereby caused; to regulate such trusts and monopolies; to promote free competition for all classes of business in the state; and declaring an emergency.' Sess. Laws 1907-08, p. 750. Neither the foregoing section nor any other section of the act in specific terms confers upon the State Corporation Commission any jurisdiction over public service corporations. The general purpose and scope of the act is clearly and fully outlined in the title. Neither in the title nor in the body of the act is any specific reference made to the regulation of rates and charges of public service corporations. Section 1 makes acts, agreements, and contracts or combinations in the form of trust or in restraint of trade or commerce illegal. Section 2 makes it the duty of the Attorney General, when he shall have sufficient evidence that the law relative to the establishment and maintenance of trusts and monopolies is being, or is about to be, violated 'by any person, firm, corporation or association engaged in any quasi public business or having a virtual monopoly of any commodity or business with the intention or effect of destroying competition or restraining trade, contrary to the provisions of this act,' to file information in the Supreme Court, and by proceeding as against a nuisance enjoin and restrain said combination or arrangement. Section 3 gives the parties who are injured in their business or property by reason of anything forbidden or declared unlawful by the act their remedy for damages. Section 4 makes the provisions of the act applicable to foreign corporations, and prescribes as a penalty for the violation thereof that upon order of the Corporation Commission· or a competent court, after due notice and in due course of law, such corporation shall have its license to do business in the state revoked. Section 5 makes it unlawful for foreign corporations or associations engaged in the production, manufacture, distribution, or sale of any commodity of general use, or rendering any service to the public, to discriminate between any person, firm, or association. Section 6 pre-

scribes the penalty for the violation of the act. Sections 7, 8, and 9 relate to procedure for the enforcement of the act. Section 10 makes certain combinations of business unlawful, and section 11 prescribes a penalty for any corporation that shall own, hold, or control, in any manner whatever, the stock of any competitive corporation engaged in the same kind of business in or out of the state, in violation of the Constitution and laws of the state. Section 12 makes the property of any corporation of the state, or of any foreign corporation, liable for any fines, penalties, or costs assessed against it for the violation of the laws of the state. In none of these sections is there any attempt to confer upon the Corporation Commission jurisdiction to prescribe rates and charges to be observed by any corporation. The sole provision in the act bearing upon this subject is to be found in the foregoing quoted section 13. This section provides that whenever a business shall have certain characteristics, it shall be a public business and shall be subject to the jurisdiction of the Corporation Commission to regulate its practices, rates, and prices; but it does not provide that all public business shall be subject in these respects to such jurisdiction. * * * The first part of said section attempts to define the class of business which the latter part of the section subjects to the jurisdiction of the Corporation Commission and the district courts. It appears to us clear that what was intended was to bring within the jurisdiction of the commission the regulation of charges and rates for services connected with those businesses that violate the acts and are connected, not with business strictly of a public character, such as common carriage, supply of water and gas, but with that class of business in which the owners, without any intent of public service, have placed their property in such a position that the public has an interest in its use.

"The distinction between the class of business and its service intended to be defined by and included in said section and the business and service of public corporations is, we think, well made by Mr. Justice Brewer, who delivered the opinion of the court in *Cotting v. Godard,* 183 U. S. 79 [22 Sup. Ct. 30, 46 L. Ed. 92], in the following language: 'In the one [referring to property devoted to public service] the owner has intentionally devoted his property to the discharge of a public service. In the other, he has placed his property in such a position that, willingly or unwillingly, the public has acquired an interest in its use. In the one he deliberately undertakes to do that which is a proper work for the state. In the other, in pursuit of merely private gain, he has placed his property in such a position that the public

has become interested in its use. In the one it may be said that he voluntarily accepts all the conditions of public service which attach to like service performed by the state itself; in the other, that he submits to only those necessary interferences and regulations which the public interest required.' It was this second class of business with which we think section 13 was dealing and intended to place under the jurisdiction of the Corporation Commission and the district courts of the state as to all practices, rates, and charges. If this section grants to the Corporation Commission power to prescribe prices, rates, and charges to be charged by any public service corporation, it confers that power as to all public service corporations, for the language that includes one includes all, and no exception is made. The act confers, not only upon the Corporation Commission jurisdiction to prescribe rates and charges under the conditions therein named, but confers also a like and concurrent power upon the district courts of the state. But the power to prescribe and regulate rates and charges to be observed by some public service corporations, to wit, transportation and transmission companies, was conferred exclusively upon the Corporation Commission by section 18, art. 9, *supra,* which was not subject to be altered, amended, or repealed until the second Monday in January, 1909. Section 35, art. 9, Const. It would therefore follow for this reason, if said section includes public service corporations, it would have to be declared in part at least unconstitutional. It would also have to be declared unconstitutional for a second reason. The function of prescribing a schedule of rates and charges to be made by public service corporations in the future for services rendered by them to the public is a legislative function. *Reagan et al. v. Farmers' Loan & Trust Co. et al.,* 154 U. S. 362 [14 Sup. Ct. 1047, 38 L. Ed. 1014]; *Interstate Commerce Commission v. Cincinnati, N. O. & T. R. Co.,* 167 U. S. 479 [17 Sup. Ct. 896, 42 L. Ed. 243].

"Section 1, art. 4, of the Constitution provides that all the powers of government of the state shall be divided into three separate departments, and except as is provided in the Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others. The Constitution nowhere authorizes the district courts of the state to prescribe rates and charges to be observed by public service corporations nor does it empower the Legislature to grant to said courts such jurisdiction. If the section under consideration be construed to include public service corporations, it would, in part

at least, be void, because of its attempting to confer legislative power upon the judicial department. It is a well-settled rule of construction that where a statute is reasonably susceptible of two different constructions—one that will sustain its validity and one that will render it unconstitutional and void—the former is to be adopted."

From all of which we conclude that none of the provisions, *supra,* confers upon the Corporation Commission power to make the order, and for that reason the same is void. But believing as we do that in view of what we have said the commission will make no further attempt to enforce the order, the writ will be withheld until the further order of the court.

All the Justices concur.