## CITY OF PAWHUSKA v. PAWHUSKA OIL & GAS CO. et al.

No. 9084—Opinion Filed July 31, 1917.

(166 Pac. 1058.)

(Syllabus by the Court.)

### 1. Gas Rates—Statutes—Validity.

Chapter 93, Session Laws 1913, entitled "An act to extend the jurisdiction of the Corporation Commission over the rates, charges, services and practice of water, heat, light and power companies, and to give said commission general supervision over such utilities, and declaring an emergency," is repugnant to and in conflict with that part of section 593, Rev. Laws Okla. 1910, conferring the power on cities of the first class to regulate by ordinance the prices to be paid for gas or lights, and operates as a repeal thereof.

### 2. Statutes—Repeal—Implied Repeal.

Where two statutes cover the same subject and the statute last adopted is repugnant to and irreconcilable with the provisions covering the same subject in the first statute, the latest expression of the Legislature will govern.

### 3. Gas—Regulation of Rates—Constitution—Construction.

Section 18, art. 9, of the Constitution did not confer upon the Corporation Commission jurisdiction and power to fix rates for a gas company furnishing gas within the limits of a city under franchise from the city.

### 4. Corporation Commission—Jurisdiction—Public Utilities.

By chapter 93, Session Laws 1913, jurisdiction is conferred upon the Corporation Commission over all public utilities, with the power to fix and establish rates and prescribe rules, requirements, and regulations affecting their services and operation and the management and conduct of their business, and under the powers thus conferred, the commission is vested with authority to make all valid and lawful orders prescribing rates, which the state, in the exercise of its sovereign capacity, could prescribe or make.

### 5. Constitutional Law—Gas—Regulation of Rates—Corporation Commission.

The power to regulate the charges for public services by municipal corporations is the power which it was the intention of the framers of the Constitution should be exercised by the sovereign power only. Such power is inherent in the state, and is a necessary attribute of sovereignty. No specific authority having been conferred by the Constitution upon cities to fix and regulate the charges for gas in municipalities, the Legislature had the right to legislate thereon whenever in its judgment the public interest required such action. The power delegated to the city of Pawhuska to regulate charges for light and gas under section 593, Rev. Laws Okla. 1910, was such a grant of power as could be taken away from said city by the Legislature and conferred upon the Corporation Commission, as done by chapter 93, Session Laws 1913. The order of the Corporation Commission establishing rates for gas to be charged consumers in the city of Pawhuska by the Pawhuska Oil & Gas Company, and requiring the installation of meters, is a valid order under said act, and said order of the commission is not repugnant to section 15, art. 2, of the Constitution of Oklahoma, nor to section 10, art. 1, of the Constitution of the United States.

### 6. Same.

Section 7, art. 18, of the Constitution of Oklahoma, expressly prohibits the surrender by the legislative branch of the state government of the power to regulate the charges for public services.

### 7. Gas—Rates—Regulation—Statute.

The provision in the act of April 2, 1915 (Laws 1915, c. 200, p. 407), "that this act shall not abrogate any existing contract, or affect or change the terms or conditions of any franchise granted by any municipal corporation prior to and in effect April 28, 1913," merely qualifies the direct legislative mandate of that act to "all persons, firms or corporations furnishing gas in all municipalities having a population over five hundred to do so through standard meters at meter rates," and does not affect the power of the Corporation Commission under the provisions of the act of March 25, 1913 (Laws 1913, c. 93, p. 150), to establish rates not inconsistent with such direct mandate.

### 8. Same—Order of Corporation Commission —Evidence.

Evidence in this case examined, and held: First, the findings of fact by the Corporation Commission are reasonably supported by the evidence; second, the presumption that the order of the commission is prima facie just, reasonable, and correct is not overcome by the evidence.

Appeal from Order of Corporation Commission.

Proceedings by the Pawhuska Oil & Gas Company before the Corporation Commission, to increase gas rates, opposed by the City of Pawhuska. From an order of the Corporation Commission, the City appeals. Affirmed.

See, also, 47 Okla. 342, 148 Pac. 118.

E. L. McCain and Preston A. Shinn, for appellant.

Leahy & MacDonald, for appellee Pawhuska Oil & Gas Co.

S. P. Freeling, Atty. Gen., J. B. Harrison, Asst. Atty. Gen., and Paul A. Walker, Counsel for Corporation Commission, for the State.

Frank N. Watson, amicus curiae.

RAINEY, J. The city of Pawhuska is a city of the first class, and in November, 1909, the voters of said city, by initiative petition, granted to the Pawhuska Oil & Gas Company a franchise for 25 years, authorizing said company to use the streets and alleys of the city for the purpose of laying its gas pipe lines for furnishing the city of Pawhuska and the inhabitants thereof with natural gas. The franchise, among other things, provided that:

"Said grantee shall furnish natural gas to the citizens, at a reasonable rate, which shall in no case exceed fifteen cents per one thousand cubic feet of gas, as registered by standard meters for the measurement of natural gas, said meters to be furnished by and be the property of grantee, or at a flat rate at the option of the consumer, which said flat rate shall in no case exceed the following prices, to wit. * * *"

Then follows the schedule of rates.

From the time of the granting of said franchise up to the present time the gas company has furnished gas under the terms of the franchise to the city of Pawhuska and its inhabitants. While said company, under said franchise, was furnishing gas both at a flat rate and through standard meters, at meter rates, the Legislature, on April 28, 1913, passed an act requiring all persons, firms, or corporations furnishing natural gas in municipalities of the state to the inhabitants thereof to do so through standard meters at meter rates. Chapter 152, Session Laws 1913. The Pawhuska Oil & Gas Company undertook to install standard meters for furnishing gas to the inhabitants of the city of Pawhuska under the provisions of said statute, and desiring to take advantage of the benefits of the law, notified its consumers of its intention so to do. Some of the inhabitants of said city and the city instituted an action in the district court of Osage county, Okla., seeking to enjoin the gas company from complying with the provisions of said law and from taking advantage of the benefits thereof. The district court granted the injunction, from which action an appeal was prosecuted by the company to this court. The judgment of the district court was reversed, this court holding that the police power of the state to police the business of distributing gas in said municipality was reserved by section 7, art. 18, of the Constitution, and that the passage of said act was a proper exercise of such power. Pawhuska Oil & Gas Co. v. City of Pawhuska et al., 47 Okla. 342, 148 Pac. 118.

While said cause was pending in this court the Legislature passed an act (chapter 200, p. 407, Sess. Laws 1915), approved April 2, 1915, amendatory of chapter 152, Session Laws 1913, requiring the furnishing of natural gas in municipalities in the state to the inhabitants thereof through standard meters at meter rates. This latter act contained a proviso, which will be hereinafter discussed.

The 1913 Legislature passed another act (chapter 93, p. 150, approved March 25, 1913), conferring upon the Corporation Commission general supervision over all public utilities. Section 2 of said act reads as follows:

"Sec. 2. The commission shall have general supervision over all public utilities, with power to fix and establish rates and to prescribe rules, requirements and regulations, affecting their services, operation, and the management and conduct of their business; shall inquire into the management of the business thereof, and the method in which same is conducted. It shall have full visitorial and inquisitorial power to examine such public utilities, and keep informed as to their general conditions, their capitalization, rates, plants, equipments, apparatus, and other property owned, leased, controlled or operated, the value of same, the management, conduct, operation, practices and services; not only with respect to the adequacy, security and accommodation afforded by their service, but also with respect to their compliance with the provisions of this act, and with the Constitution and laws of this state, and with the orders of the commission."

On November 16, 1916, the Pawhuska Oil & Gas Company applied to the Corporation Commission for authority under the provisions of chapter 93, Session Laws 1913, to raise its rates for gas in the city of Pawhuska. The city of Pawhuska appeared and moved for a dismissal of said application, upon the ground that the commission was without jurisdiction to raise the rates. This motion was overruled by the commission, and exceptions saved by the city, whereupon the city filed its answer to the application of the gas company, in which answer the jurisdiction of the commission in this particular proceeding was again challenged. A hearing was had before the commission in January, 1917, as a result of which the commission issued its order increasing the rates theretofore charged the customers of

said company in the city of Pawhuska, and requiring that all gas sold to the company's consumers in said municipality should be sold through standard meters, requiring the company to install such meters, and further providing that the gas company should discontinue the sale of gas at a flat rate. From this order of the commission the city of Pawhuska brings the case here.

It is first urged by counsel for appellant that if chapter 93, Session Laws 1913, conferred jurisdiction upon the commission to fix and establish rates for public utilities, said act did not apply to cities of the first class, for the reason, as it claims, that at the time of the passage of the said act section 593, Rev. Laws Okla. 1910 (the pertinent parts of which are identical with section 398, Statutes of 1903), authorized said cities to regulate by ordinance the rates to be charged by gas companies, and that said act was not repealed by the act conferring jurisdiction on the commission. Section 593, Rev. Laws of Okla. 1910, supra, reads as follows:

"The council may provide for and regulate the lighting of the streets, erection of lampposts, and the council shall have power to make contracts with and authorize any person, company or association to erect gas or electric works in said city and give such person, company or association the privilege of furnishing gas or electricity to light the streets, lanes and alleys of said city for any length of time, not exceeding twenty-five years. But no such grant shall be so conditioned as to prevent the council from granting to other persons or companies or corporations the right to use the streets for like purposes under the provisions of sections 5a and 5b of article 18 of the Constitution; and all such grants shall be subject at all times to reasonable regulations by ordinance as to the use of streets and prices to be paid for gas or lights."

The pertinent parts of the above section were in the Territorial Statutes on the date of the adoption of the Constitution, and at the time the franchise was granted the Pawhuska Oil & Gas Company by the city of Pawhuska.

While it may be true, as contended by appellant, that section 593, supra, conferred upon the city of Pawhuska the power to change the rates prescribed by franchise to be charged for furnishing gas to the city of Pawhuska and the inhabitants thereof, we cannot agree with counsel that the act conferring jurisdiction on the Corporation Commission did not take such right away from the city of Pawhuska and all other cities of the first class. In support of their contention counsel for appellant states that said act

did not refer in any way to the repeal of section 593, Rev. Laws of Okla. 1910, supra, and insists that said act is not inconsistent with the provisions contained in section 593.

The title of the act conferring jurisdiction upon the commission is as follows:

"An act to extend the jurisdiction of the Corporation Commission over the rates, charges, services and practice of water, heat, light and power companies, and to give said commission general supervision over such utilities, and declaring an emergency."

The language of section 2 of said act, supra, could hardly be more comprehensive. Concededly repeals by implication are not favored, but it is also well settled that the Legislature may, within constitutional limitations, express its will in any form it sees fit, and a repeal is effected where the intent to repeal is clearly evidenced; and where two statutes cover the same subject and the statute last adopted is repugnant to and irreconcilable with the provisions covering the same subject in the first statute, the latest expression of the Legislature will govern. Where the conflict is irreconcilable on the subject covered by both statutes, the old law is repealed by implication to the extent of the repugnancy, but no further. The two statutes under consideration cannot stand, for the reason that the power to regulate the rates to be charged for gas by the Pawhuska Oil & Gas Company cannot exist and be exercised by the city of Pawhuska and the Corporation Commission at the same time, and it was clearly the intention of the Legislature that the Corporation Commission should have "supervision over all public utilities with power to fix and establish rates." The act conferring such jurisdiction on the Corporation Commission is repugnant to that portion of section 593, Rev. Laws Okla. 1910, purporting to confer such authority on cities of the first class, and said section 593 is repealed to that extent. It is proper, in determining the intention of the Legislature to effect repeals, to take into consideration the established policy of the Legislature as disclosed by a general course of legislation. The act conferring jurisdiction on the Corporation Commission, with power to regulate charges for public services for gas, is in harmony with the established policy of the Legislature to conserve gas as one of the natural resources of the state, which policy is evidenced by what is known as the "Conservation Act," approved March 30, 1915, chapter 197, Session Laws 1915. It seems to us that it cannot be seriously contended that said section 593, in so far as it delegated the pow-

er to cities to regulate rates or charges for public services, was not repealed by implication.

In the case of Guthrie Gas, Light, Fuel & Improvement Co. et al. v. Board of Education of City of Guthrie et al., 64 Oklahoma, 166 Pac. 128, we held, in an opinion by Mr. Justice Hardy, that said act did confer jurisdiction on the Corporation Commission to regulate the charges for gas over all public utilities in municipalities such as the business of the appellee company in this case. The syllabus reads:

"By chapter 93, Laws 1913, jurisdiction is conferred upon the Corporation Commission over all public utilities, with the power to fix and establish rates and prescribe rules, requirements, and regulations affecting their services and operation and the management and conduct of their business, and under the powers thus conferred the commission is vested with authority to make all valid and lawful orders prescribing rates which the state, in the exercise of its sovereign capacity, could prescribe or make."

While in that case the claim was not made, as it is here, that said act did not apply to cities of the first class, we did apply the act to the city of Guthrie, a city of the first class, and we think correctly so.

It is next contended that, if the act conferring jurisdiction on the commission operated as a repeal of that part of section 593, Rev. Laws Okla. 1910, that empowered municipalities to regulate charges for public services, and was intended to apply to cities of the first class, said act is in conflict with section 18, art. 9, of the Constitution, and is therefore null and void. In support of this contention it is argued that the franchise granted to appellee falls within the proviso of section 18, art. 9, of the state Constitution, and that, said contract having been entered prior to the passage of the act conferring jurisdiction upon the commission, in such cases said contract was protected by the terms of said proviso, notwithstanding that this particular question was decided adversely to the contention of appellant in the case of Shawnee Gas & Electric Co. v. Corporation Commission, 35 Okla. 454, 130 Pac. 127. We are asked to recede from our holding in that case. Out of deference to the earnestness with which counsel have presented this question we have read all the authorities cited in the briefs, have re-examined the opinion in said case, and after a most careful consideration we have concluded that the construction placed by the court upon the proviso in section 18, art. 9, was correct. Construing said proviso, Mr. Justice Turner, speaking for the court, said:

"We are therefore of opinion that gas companies are not within the purview of the enactments under construction, but, as to the fixing of their rates, were purposely left to be dealt with by the Legislature. In other words, all that part of the section within said proviso inhibits a construction of said section that will confer upon the commission authority to fix rates for a gas company furnishing gas within the limits of a city under franchise from the city, and that, too, whether the city has authority conferred upon it by Comp. Laws 1909, sec. 693, to regulate rates and charges therefor or not. This construction does not leave this proviso without a subject upon which to operate. For what of the numerous street railway and telephone lines, and perhaps other public service corporations, whose rates had been fixed by similar franchises granted by the cities, towns, and counties throughout the state prior to the adoption of the Constitution? These, it would seem, fall within the protection of the proviso, but not the petitioner company for the reasons stated."

The next question raised is that the order of the Corporation Commission is void, for the reason that it impairs the obligations of the contract entered into between the Pawhuska Oil & Gas Company and the city of Pawhuska, and is therefore repugnant to section 15, art. 2, of the Constitution of Oklahoma, and to section 10, art. 1, of the Constitution of the United States prohibiting the passage of any law impairing the obligation of contracts. The authority granted to the city of Pawhuska in this case, under section 593, Rev. Laws Okla. 1910, to fix and regulate the charges for gas furnished the inhabitants of said city, was the power delegated to it by the state, and said city only had such right until such time as the state saw fit to exercise its paramount authority directly by a law enacted by the people through the initiative and referendum or the state Legislature, or indirectly by that legislative subdivision of the government having such power by virtue of its delegation by the supreme legislative authority. By chapter 93, Session Laws 1913, such power was delegated to the Corporation Commission. No specific authority having been conferred by the Constitution upon cities to fix and regulate the charges for gas in municipalities, the right existed in the state to withdraw the power delegated to the municipalities whenever, in the judgment of the Legislature, the public interest required it. There are numerous authorities to this effect.

The power of the Railroad Commission of the state of Wisconsin to fix rates was involved in the case of the City of Manitowoc v. Manitowoc & Northern Traction Co., 145 Wis. 13, 129 N. W. 925. Speaking of this

question, the Supreme Court of Wisconsin said:

"No specific authority having been conferred on the city to enter into the contract in question, the right of the state to interfere whenever the public weal demanded was not abrogated. The contract remained valid between the parties to it until such time as the state saw fit to exercise its paramount authority, and no longer. To this extent and to this extent only is the contract before us a valid subsisting obligation. It would be unreasonable to hold that by enacting section 1862 or section 1863, St. 1898, the state intended to surrender its governmental power of fixing rates. That power was only suspended until such time as the state saw fit to act."

There is an instructive and interesting discussion of this power of sovereignty in the case of Pioneer Telephone & Telegraph Co. v. State, 33 Okla. 724, 127 Pac. 1073. Mr. Justice Turner, speaking for the court, said:

"In State ex rel. Wisconsin Telephone Co. v. City of Sheboygan, 111 Wis. 23, 86 N. W. 657, the court, speaking of this power, said that it was inherent in the state and a necessary attribute of sovereignty; that it does not pass to a mere subdivision of government except by express grant or by necessary implication from other powers granted; that every citizen holds his property subject to the proper exercise of this power, either by the state Legislature direct or by a public or municipal corporation to which the Legislature may delegate it (citing 1 Dill. Mun. Corp., sec. 141). Speaking to the point there in question, the court said: 'No express authority is given the city to regulate charges for telephone service, nor is there any express grant of power from which such authority can necessarily be implied. Construing the charter and the statute in the light of the rules of law stated, the city has authority to exercise its police power to protect the public from unnecessary obstructions, inconveniences, and danger and to determine in what manner the relator may erect its poles so as to accomplish this result. Michigan T. Co. v. Benton Harbor, 121 Mich. 512, 80 N. W. 386, 47 L. R. A. 104. It has no authority to impose other conditions. That power rests in the Legislature. The power to regulate charges was not included in or incidental to the power to regulate the manner of using streets. There is not the remotest relation between them.' "

In the same opinion we quoted with approval from a very able discussion of this power of sovereignty in the case of Home Tel. Co. v. Los Angeles, 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176, wherein the Supreme Court of the United States said:

"The power to fix, subject to constitutional limits, the charges of such a business as the furnishing to the public of telephone service is among the powers of government, is legislative in its character, continuing in its nature, and capable of being vested in a municipal corporation. * * * The surrender, by contract, of a power of government, though in certain well-defined cases it may be made by legislative authority, is a very grave act, and the surrender itself, as well as the authority to make it, must be closely scrutinized. No other body than the supreme Legislature (in this case, the Legislature of the state) has the authority to make such a surrender unless the authority is clearly delegated to it by the supreme Legislature. The general powers of a municipality or of any other political subdivision of the state are not sufficient. Specific authority for that purpose is required. This proposition is sustained by all the decisions of this court, which will be referred to hereafter, and we need not delay further upon this point. It has been settled by this court that the state may authorize one of its municipal corporations to establish by an inviolable contract the rates to be charged by a public service corporation (or natural person) for a definite term, not grossly unreasonable in point of time, and that the effect of such a contract is to suspend, during the life of the contract, the governmental power of fixing and regulating the rates. Detroit v. Detroit Citizens' Street R. Co., 184 U. S. 368, 382, 22 Sup. Ct. 410, 46 L. Ed. 592, 605; Vicksburg v. Vicksburg Waterworks Co., 206 U. S. 496, 508, 27 Sup. Ct. 762, 51 L. Ed. 1155, 1160. But for the very reason that such a contract has the effect of extinguishing pro tanto an undoubted power of government, both its existence and the authority to make it must clearly and unmistakably appear and all doubts must be resolved in favor of the continuance of the power."

In South McAlester-Eufaula Telephone Co. v. State, 25 Okla. 524, 106 Pac. 962, this court, in an opinion by Mr. Justice Kane, said:

"That the power to regulate the charges for public service by municipal corporations is a power which it was the intention of the framers of the Constitution should be exercised by the sovereign power only is further evidenced by section 7 of article 18 of the Constitution, entitled 'Municipal Corporations,' which provides that: 'No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality shall divest the state or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment. Nor shall the power to regulate the charges for public service be surrendered, and no exclusive franchise shall ever be granted.' "

While it is held in Home Telephone Co. v. Los Angeles, supra, that in well-defined cases a surrender by contract of the power of government may be made by legislative authority, such a surrender cannot be made where

prohibited by the Constitution, and section 7, art. 18, of our Constitution expressly prohibits the surrender by the legislative branch of our state government of the "power to regulate the charges for public services."

It is next contended that, if the Corporation Commission had jurisdiction to regulate the rates to be charged for gas in the city of Pawhuska subsequent to the taking effect of chapter 93, Session Laws 1913, conferring such jurisdiction, said jurisdiction was taken away from the commission by the meter act approved April 2, 1915 (chapter 200, p. 407, Session Laws 1915), which act was amendatory of the meter act approved April 28, 1913 (chapter 152, p. 309, Session Laws 1913), requiring all persons, firms, and organizations engaged in the business of furnishing natural gas to the inhabitants of municipalities to do so through standard meters at meter rates. The second proviso of the act of April 2, 1915, reads as follows:

"Provided further, that this act shall not abrogate any existing contract, or affect or change the terms or conditions of any franchise granted by any municipal corporation prior to, and in effect April 28, 1913."

The franchise granted by the city of Pawhuska to the Pawhuska Oil & Gas Company was in effect April 28, 1913, and counsel for appellant insists that by virtue of the terms of the above proviso the prices charged for gas under the franchise could not be affected or changed. In answer to this argument counsel for Pawhuska Oil & Gas Company say, in effect, that inasmuch as appellee attempted to take advantage of the benefits accorded it by the act of April 28, 1913, and was prevented from so doing by the action of appellant in securing an injunction in the district court of Osage county, said act of April 28, 1913, conferred upon said gas company a vested right which could not be abrogated by the terms of the proviso of the act of April 2, 1915.

We do not think the meter act of April 28, 1913, conferred such a right upon the Pawhuska Oil & Gas Company to have meters installed and to charge at meter rates as could not be amended or repealed by the Legislature at any time, and the fact that the appellee had not installed meters in pursuance of the provisions of said act, because prevented by the injunction suit, in our opinion did not prevent the Legislature from repealing the act so far as it applied to the city of Pawhuska, which it did by the terms of the proviso in the meter act approved April 2, 1915. The question then arises, Did the Corporation Commission, not-

withstanding this proviso in the meter act of April 2, 1915, and independently of said act, have the power to fix the charges for gas and to require the installation of meters as impliedly incidental thereto? The act of April 2, 1915, as well as the act of April 28, 1913, is a direct mandate from the Legislature, requiring all persons, firms, or corporations furnishing gas in municipalities having a population over 500 to do so through standard meters at meter rates, but by the terms of the proviso in the act of April 2, 1915, supra, the act does not apply to contracts and to franchises granted by municipal corporations prior to and in effect April 28, 1913, where the installation of said meters and the charging at meter rates would abrogate the contract, or affect or change the terms or conditions of the franchise, and as the city of Pawhuska had granted such a franchise in effect on said date, said franchise is not affected by the meter act.

However, we do not regard the meter acts as repugnant to or in conflict with the act conferring jurisdiction upon the Corporation Commission, but as supplementary thereto. In other words, the act conferring jurisdiction on the Corporation Commission to fix the charges for gas gave the Corporation Commission authority to proceed to establish rates if it saw fit, but said act did not compel action on the part of the commission. But whether the Corporation Commission established rates or not by the terms of the act of April 28, 1913, requiring the installation of meters, all persons, firms, or corporations furnishing gas to consumers in the municipalities therein specified were required so to do, and to charge at meter rates. The meter act approved April 28, 1913, did not attempt to fix the rates, and the act approved April 2, 1915, was to the same effect, except that said act was not applicable to certain franchises above mentioned, and in the absence of an order from the Corporation Commission, fixing the rates and requiring the installation of meters, the persons, firms, or corporations furnishing gas in cities having such franchises were not required to do so by virtue of the terms of the meter act. We think, however, that notwithstanding that by the terms of said meter act the persons, firms, or corporations furnishing gas in said cities were not required to install meters and charge for gas at meter rates by legislative enactments, they were not excused from so doing if the Corporation Commission so ordered under the authority delegated to it by the act conferring jurisdiction on the commission.

The meter acts were not applicable to towns having a population of less than 500, and we think it is beyond dispute that the Corporation Commission, by virtue of the authority conferred by the act approved March 25, 1913, had the authority to regulate the rates and require the installation of meters in said towns. And by virtue of the proviso in the act of April 2, 1915, in addition to the persons, firms, or corporations furnishing gas in towns having a population under 500 not being required to install meters, persons, firms, or corporations furnishing gas in cities such as the city of Pawhuska, under franchises in effect April 28, 1913, were also not required to install meters and to charge at meter rates, but we do not think the proviso goes any further or confers any greater right. It places the city of Pawhuska, as regards the franchise granted appellee, in the same situation as are towns under 500. So we say there is nothing in the meter acts that can be construed to prevent the Corporation Commission from exercising the power delegated to it by chaper 93, Session Laws 1913.

It is urged that the power of municipalities to regulate the charges of any public service corporation is protected by the proviso in section 18, art. 9, of the Constitution, but, as we have already seen, a public service company furnishing gas to the inhabitants of a municipality does not come within the terms of said proviso. Shawnee Gas & Electric Co. v. Corporation Commission, 35 Okla. 454, 130 Pac. 137.

The second paragraph of section 7, art. 18, of the Constitution reads:

"Nor shall the power to regulate the charges for public services be surrendered; and no exclusive franchise shall ever be granted."

This language is found in article 18 of the Constitution, entitled "Municipal Corporations," and from this fact it is argued that, as the city of Pawhuska had the power to regulate the charges for public service at the time of the adoption of the Constitution, the provision above quoted should be construed as an inhibition against the exercise of that power by the Corporation Commission or by the Legislature itself, and that the exercise of such power by the Legislature or the commission would be tantamount to the surrender of the power by the city. We do not think the language susceptible of such construction. That part of section 7, art. 18, above quoted, prohibiting the surrender of the power to regulate the charges for public services, is a limitation upon the supreme legislative power, as well as upon

the subdivision of the state government to which such power is or may be delegated within constitutional limitations by the legislative branch of the government. It simply means that this power of sovereignty cannot be surrendered. Such limitation upon the state and its subordinate subdivisions can only be abrogated by repeal or amendment of section 7, art. 18, of the Constitution.

In the case of the Pawhuska Oil & Gas Co. v. City of Pawhuska, supra, it was noted that the power to regulate the charges for public services was reserved to the city and the state. We there said:

"That said act was one of police regulation intended to prevent the waste of gas. The very act authorizing the city to grant this franchise is entitled 'An act to regulate the use and preservation of oil and gas, * * *' and, stripped to the point, gives this and like companies authority to build pipe lines through the streets and alleys of the municipalities of this state with the consent and 'subject to the control of the local municipalities as to how the business of distribution in that municipality shall be conducted.' Which shows the intent of the state to be, in authorizing the municipality to grant this franchise, to reserve to the municipality, notwithstanding the terms of the franchise, the power to police the business of distributing gas thereunder in that municipality. This police power had theretofore been reserved both to the state and the city. Article 18, sec. 7, of the Constitution provides: 'No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the state, or any of its subordinate subdivisions of their control and regulation of such use and enjoyment.' Having been expressly reserved by said section of the Constitution to both the state and the municipality, and again expressly reserved to the city by the act authorizing the municipality to grant the franchise, the reservation of the power was as much a part of the franchise as if written therein. It follows that whether the franchise amounted to a contract between the city and the company we need not say, for, sure it is, the state, by the act complained of, had a right to say to the company, as it did, in effect, by the terms of said act, that, in the interest of the conservation of the natural resources of the state, the company shall no longer be permitted to sell gas at a flat rate, but thereafter it was required to furnish the same to its customers (with certain exceptions named in the act) through standard meters and at meter rates. And this was a proper exercise of police power."

It is strenuously insisted by appellant that there are many good reasons why the power to regulate charges for gas should be vested in the municipalities of the state rather than

in the Corporation Commission, but it is well settled that the courts are not concerned with the policy of the law, and it is our duty to interpret the constitutional and legislative enactments as we find them. The question of the advisability of conferring this power upon the Corporation Commission rested peculiarly within the sound judgment of the Legislature.

Natural gas is undoubtedly a public utility in which the state is intensely interested. "This interest has been manifested in several legislative enactments, and it is now the established policy of our state to conserve natural gas, as is evidenced by what is known as the "Gas Conservation Act" (section 3, ch. 197, Session Laws 1915).

The remaining question presented by the record is:

"Was the order of the commission fixing the rates to be charged the inhabitants of the city of Pawhuska for gas furnished by the Pawhuska Oil & Gas Company reasonable and just?"

The Constitution provides that:

"The action of the commission appealed from shall be regarded as prima facie reasonable, just and correct."

In Atchison, T. & S. F. R. Co. v. State et al., 23 Okla. 210, 100 Pac. 11, 21 L. R. A. (N. S.) 908, this court, in an opinion by Mr. Justice Williams, after reviewing the authorities, said:

"In the connection that the term 'prima facie' is used in section 22, art. 9, supra, it is not contemplated that any additional evidence should be considered by the Supreme Court on review, unless within the discretion of said court the cause should be remanded for further investigation. If no additional testimony is to be considered on appeal in the Supreme Court, reviewing the same in the same capacity as a legislative body, as held by the Supreme Court of the United States in the case of Prentis et al. v. Atlantic Coast Line Co. et al. [211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150], what is the effect of being 'regarded as prima facie just, reasonable and correct?' It simply means that, in considering the testimony, and the record upon which the order was based, the presumption arises in the Supreme Court that the order thereon made is to be regarded as prima facie, just, reasonable, and correct, such presumption subject to be overcome by evidence that may be in the record that clearly rebuts same. Such presumption arising in favor of the order, while a strong one, is not one of a conclusive character. It will give way to a fair exhibition of the contravailing evidence in the record. The presumption given by this pro-

vision in favor of the commission's order belongs to that class of prima facie orders or presumptions that are rebuttable, and will yield to the legitimate recitals of the record or the probative force of the evidence in the record. It casts upon the appellant the burden of making it clearly appear to the reviewing body that the order made by the commission is erroneous. The appellant cannot, with hope of success, ask the revising tribunal to overthrow the findings of the commission upon vague inferences or remote possibilities. It will fail unless it overcomes the presumption by making error manifest. Elliot's Appellate Procedure, sec. 711."

The evidence in this case is voluminous, and it would be impracticable to set it out in this opinion, but we have examined the record, and find that the findings of fact of the commission are reasonably supported by the evidence, and we are unable to say that the presumption that the order of the commission is prima facie just, reasonable, and correct is rebutted by the evidence.

As stated in the brief filed on behalf of the state, it is the duty of the commission to allow an increase in rates where the facts show that such increase is justified, as well as a reduction in cases where the facts justify a reduction, which is the uniform holding of the commissions of other states. In the instant case the rates fixed seem to be as low as in other first-class cities of the state. The rate as fixed by the commission is 20 cents net per thousand cubic feet for domestic gas. The prevailing rates in some of the other cities are as follows: Ardmore, 30 cents (net); Bartlesville, 25 cents; Blackwell, 25 cents; Chelsa, 25 cents; Claremore, 25 cents; Collinsville, 25 cents; Cleveland, 25 cents; Dustin, 25 cents; El Reno, 26 cents (net); Choteau, 30 cents; Guthrie, 25 cents (net); Henryetta, 25 cents; Muskogee, 25 cents; Nowata, 25 cents; Oklahoma City, 25 cents (net); Newkirk, 25 cents (net); Okmulgee, 20 cents (net); Ponca City, 25 cents; Tonkawa, 25 cents (net); Sapulpa, 22.5 cents (net); and Shawnee, 25 cents (net). Thus it will be seen that the rate as fixed by the commission for Pawhuska compares favorably with other first-class cities, and under the order of the commission the appellee is directed to continue to furnish gas free to the city of Pawhuska for street lighting, city buildings, and public schools, as it had theretofore done under the franchise.

The case is therefore affirmed.

All the Justices concur, except KANE, J., not participating.