HICKMAN v. STATE ex rel. SERVICE OKLAHOMA
2023 OK CIV APP 17
530 P.3d 96
Case Number: 120906
Decided: 04/14/2023
Mandate Issued: 05/11/2023
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2023 OK CIV APP 17, 530 P.3d 96

 

STEVE R. HICKMAN, Plaintiff/Appellee, Plaintiff/Appellee/Counter-Cross Appellant,
v.
STATE OF OKLAHOMA ex rel. SERVICE OKLAHOMA, Defendant/Appellant/Counter Appellee, and
GEICO CASUALTY COMPANY, Defendant/Cross-Appellee.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

REBECCA B. NIGHTINGALE, TRIAL JUDGE

AFFIRMED

Steven R. Hickman, FRASIER, FRASIER & HICKMAN, LLP, Tulsa, Oklahoma, for Plaintiff/Appellee/Counter-Cross Appellant,

Kyla K. Williams, Assistant General Counsel, OKLAHOMA TAX COMMISSION, Oklahoma City, Oklahoma, for Defendant/Appellant/Counter Appellee,

Gerard F. Pignato, Matthew C. Kane, RYAN WHALEY, Oklahoma City, Oklahoma, for Defendant/Cross-Appellee.

THOMAS E. PRINCE, PRESIDING JUDGE:

¶1 This appeal stems from an Order by the trial court that granted summary judgment and directed the Oklahoma Tax Commission47 O.S. §§ 1105

BACKGROUND

¶2 Hickman purchased the vehicle at the center of this case on April 13, 2021, for $28,888.00. Just 3 days later, on April 16, 2021, the vehicle was involved in an accident. Plaintiff submitted a claim to his insurance carrier, GEICO Casualty Company. GEICO estimated the damages to Hickman's vehicle at $17,761.34. On May 10, 2021, GEICO paid Hickman $18,951.57, which reflected the total value of the vehicle less the salvage value of the vehicle retained by Plaintiff. Hickman maintained possession of the vehicle and paid to have the vehicle repaired, which totaled $9,585.51.

¶3 GEICO notified the Oklahoma Tax Commission of the total loss on May 11, 2021. Notification to the OTC was required by statute because the vehicle was involved in a collision resulting in a loss greater that 60%, but less than 80% of the vehicle's fair market value prior to the accident. The OTC notified Hickman that he was required to surrender the original certificate of title to any Oklahoma tag agency, whereupon he would be issued a salvage title. When the vehicle's tag came up for its next annual renewal, the OTC refused to issue an annual certification of registration, again advised Hickman that a salvage title was required and further advised Hickman that, in order to obtain a standard title on the vehicle, he would need a certification by GEICO reporting an amount of damage less than 60% of the fair market value of the vehicle.

¶4 Hickman filed this action on March 18, 2022, naming the OTC as the sole Defendant, seeking injunctive relief for the issuance of a standard title for the vehicle, an annual certification of registration and decal, together with a purging of the OTC's files with reference to any "salvage" mention on the title. Hickman filed a Motion for Summary Judgment on April 21, 2022, which was granted on May 25, 2022, without a response having been filed by the OTC. On August 16, 2022, upon timely request by the OTC, the trial court vacated its Order of April 21, 2022. That day (i.e., August 16, 2022), Hickman filed an Amended Petition that added GEICO as a Co-Defendant and claiming that GEICO was "responsible for the problem". Hickman also made a claim therein of "unconstitutional" conduct by the OTC. Hickman filed a Supplemental Motion for Summary Judgment on August 24, 2022. Hickman specifically argued in the Supplemental Motion for Summary Judgment that "[t]o the extent that the statute makes an interested party the arbiter and does not give process rights, we have a taking without due process."

STANDARD OF REVIEW

¶5 The Exhibit "C" to the OTC's Petition in Error states three issues to be raised on appeal. We have reformulated the Service Oklahoma's claimed three errors to just one central issue: i.e., whether 47 O.S. §§ 1105de novo. Wood v. Mercedes-Benz of Oklahoma City, 2014 OK 68336 P.3d 457Id. (citation omitted). Examination of a grant of summary judgment requires appellate courts to determine whether the record actually presented reveals disputed material facts. Id.; see also Okla. D. Ct. R. 13(a) (explaining that "[a] party may move for [] summary judgment . . . on the merits on the ground that the evidentiary material filed with the motion or subsequently filed with leave of court show that there is no substantial controversy as to any material fact"). Grants of summary judgment are proper, and will be affirmed, when the evidentiary materials show that "there is no substantial controversy as to any material fact and that the moving party is entitled to judgment as a matter of law." Lowery v. Echostar Satellite Corp., 2007 OK 38160 P.3d 959

ANALYSIS

Summary Judgement Process

¶6 Hickman asserts in his Cross/Counter-Petition that a waiver occurred because the OTC never responded to his Supplemental Motion for Summary Judgment. The Summary Judgment record shows that, in Hickman's October 4, 2022, "Application for Ruling on Motion", he argued that the failure of the OTC to respond invoked the "criteria set for [sic] in Spirgis v. Circle K Stores, Inc., 1987 OK CIV APP 45743 P.2d 682Id., at ¶ 9 ("if the motion for summary judgment is not well-taken, the failure of the opposing party to respond does not mean that the motion must be granted by the court."). In light of the holding in Spirgis and other applicable authority, no waiver occurred here and this Court, like the trial court, is duty bound to search the evidentiary record and determine whether the evidentiary materials support the entry of summary judgment. See e.g., Kohler v. Kline & Kline, Inc., 2002 OK CIV APP 438 P.3d 257

Statutory Interpretation 

¶7 The single (reformulated) issue raised by the OTC in this appeal is whether 47 O.S. §§ 1105See Brannon v. Munn, 2003 OK CIV APP 3368 P.3d 224

¶8 The language of § 1105A(1), defines a "salvage vehicle" as follows:

1. 'Salvage vehicle' means any vehicle which is within the last ten (10) model years and which has been damaged by collision or other occurrence to the extent that the cost of repairing the vehicle for safe operation on the highway exceeds sixty percent (60%) of its fair market value, as defined by Section 1111 of this title, immediately prior to the damage. For purposes of this section, actual repair costs shall only include labor and parts for actual damage to the suspension, motor, transmission, frame or unibody and designated structural components;

(emphasis added).

¶9 The process or procedural requirements for the issuance of the appropriate title following an event that causes a "total loss" of a vehicle are set out in § 1111. The cornerstone of Oklahoma's salvage title law is the duty of an insurer to report its determination to the OTC that the damage to a vehicle meets the statutory definition for a "total loss". 47 O.S. § 1111B. The definitions of a "loss", "total loss" and "fair market" value are set out in § 1111A(1), (2) & (4), in part, as follows:

1. 'Loss' means the cost, in dollars, to repair or replace a vehicle which has been damaged by collision or other occurrence. The amount paid by an insurer to a holder of the certificate of title for repair of a damaged vehicle shall be prima facie evidence of the amount of the loss. The amount paid by an insurer to a holder of the certificate of title for replacement of a damaged vehicle less the resale value of the damaged vehicle shall be prima facie evidence of the amount of the loss;

2. 'Fair market value' means the value of a vehicle as listed in the current National Auto Dealers Association guidebook or other similar guidebook or the actual cash value, whichever is greater;

***

4. 'Total loss' means a loss which is equal to the fair market value of the vehicle immediately prior to the damage to or theft of the vehicle; . . . .

(emphasis added). The reporting duties imposed on an insurer and the guidelines to be followed by the OTC for the issuance of the appropriate title upon receipt of such a notice are set out in § 1111C & L, in part, as follows:

C 1. If an insurance company pays a claim for a loss which is less than a total loss but the cost of repairing the vehicle for safe operation on the highway exceeds sixty percent (60%) of the fair market value of the vehicle, or if any vehicle not insured is damaged to the extent that the cost of repair for safe operation on the highway exceeds sixty percent (60%) of the fair market value of the vehicle, any holder of the certificate of title for the vehicle shall return the certificate of title to Service Oklahoma or a licensed operator within thirty (30) days from receipt of payment for the loss.

2. Upon receipt of the certificate, Service Oklahoma or the licensed operator shall issue a salvage title for the vehicle. . . .

3. If the actual documented cost of repairing the vehicle for safe operation on the highway does not exceed sixty percent (60%) of the fair market value of the vehicle as defined in this section, the certificate of title shall be reissued to the holder and the vehicle shall not be subject to inspection as required under this section. The actual documented cost of repairing the vehicle pursuant to this paragraph shall be certified by the insurance company paying the loss.

***

L. Any insurance company that pays a claim for a loss where the cost of repairing the vehicle for safe operation on the highway exceeds sixty percent (60%) of the market value of the vehicle or pays a claim for a flood-damaged vehicle as defined in Section 1105 of this title shall notify, in writing, the holder of the certificate of title of the requirements of this section and shall notify Service Oklahoma of the payment of such claim. The notice shall include the estimated total damage percentage determination of the actual cash value made by the insurance company to repair the vehicle for safe operation on the highway. The insurance company shall also send a copy of the notification to the holder of the title. Service Oklahoma shall provide notice to the owner of the vehicle in writing requiring the owner to surrender the title along with the fee to Service Oklahoma or one of its licensed operators within thirty (30) days from the receipt of notice for the issuance of the appropriate title based on the amount of loss. Service Oklahoma shall reissue the appropriate title with the words 'Flood Damaged' on the face of the title in the case of a flood-damaged vehicle; provided, no insurance company shall pay a claim for less than the amount to which the holder of the certificate of title is rightfully entitled in order to avoid compliance with this section.

¶10 It is our duty to give meaning and effect to the words chosen by the Legislature, unless to do so would result in an absurdity. See Tate v. Browning-Ferris, Inc., 1992 OK 72833 P.2d 1218Hill v. Board of Education, District I-009, Jones, Oklahoma, 1997 OK 10711, ¶ 5, 944 P.2d 930Greenwood Centre, Ltd. v. Nightingale, 2020 OK 59465 P.3d 1269

¶11 The phrase "prima facie evidence", as used in the definition of "total loss" in § 1111A(1), provides legislative direction that an insurer's determination of "total loss", including the cost of repairing the vehicle for safe operation on the highway and the fair market value of the vehicle in question is to represent a rule of procedure for the establishment of a basic fact that may be challenged or rebutted in a civil action. See 12 O.S. § 2002

It simply means that, in considering the testimony, and the record upon which the order was based, the presumption arises in the Supreme Court that the order thereon made is to be regarded as prima facie just, reasonable, and correct, such presumption subject to be overcome by evidence that may be in the record that clearly rebuts same. Such presumption arising in favor of the order, while a strong one, is not one of a conclusive character. It will give way to a fair exhibition of the contravailing evidence in the record . . . .

City of Pawhuska v. Pawhuska Oil & Gas Co., 1917 OK 397166 P. 1058Cf. 12 O.S. § 2303 repairing the vehicle for safe operation on the highway (together with the fair market value of the vehicle in question) compel the creation of a legal presumption that the insurer's determination is legally correct and will stand if not rebuffed or contradicted in a civil action (i.e., that the insurer's report, unless rebuffed or contradicted in a civil action, must be accepted by the OTC as a matter of law). Otherwise, the phrase "prima facie evidence", as used in the definition of "total loss" in § 1111A(1), would be rendered superfluous. See Farris v. Cannon, 1982 OK 88649 P.2d 529

¶12 Consequently, the trial court properly sustained Hickman's Supplemental Motion for Summary Judgment because 1105 & 1111, allowing Hickman to pursue this civil action to challenge GEICO's determination of the costs of repairing the vehicle for safe operation on the highway. Moreover, the undisputed facts in the summary judgment record show that Hickman was entitled to relief, as a matter of law.

Due Process

¶13 In light of our holding concerning the proper statutory interpretation of §§ 1105 & 1111, that an owner of a vehicle may pursue a civil action to challenge an insurer's determination of the costs of repairing a vehicle for safe operation on the highway, it is not necessary that we address Hickman's due process argument with respect to the relevant statutory scheme concerning the issuance of salvage titles. See Dablemont v. State, Dep't of Pub. Safety, 1975 OK 162543 P.2d 563

CONCLUSION

¶14 For the reasons and upon the grounds outlined herein, we affirm the trial court's January 3, 2023, Journal Entry of Judgment.

MITCHELL, C.J., and BELL, J., concur.

FOOTNOTES

See 12 O.S. § 2024D (providing, in part, that "[i]n any action, suit, or proceeding to which the State of Oklahoma or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of this state affecting the public interest is drawn into question, the court shall certify such fact to the Attorney General, and shall permit the State of Oklahoma to intervene . . .".).

i.e., Appellant's statement of "Issues to be Raised on Appeal"--to be of crucial importance because it alone "defines the issues raised on appeal." 5 Clyde A. Muchmore & Harvey D. Ellis, Oklahoma Appellate Practice § 19.2 (2022 ed.); cf. Dani v. Miller, 2016 OK 35374 P.3d 779

47 O.S. § 1105A