CHARLES F. X. O'BRIEN, APPELLANT, v. BOARD OF PUBLIC UTILITIES COMMISSIONERS, AND PUBLIC SERVICE RAILWAY COMPANY, RESPONDENTS.

INHABITANTS OF THE CITY OF TRENTON ET AL., APPELLANTS, v. BOARD OF PUBLIC UTILITIES COMMISSIONERS, AND TRENTON AND MERCER COUNTY TRACTION COMPANY, RESPONDENTS.

Argued November 25, 1918—Decided March 3, 1919.

1. The board of public utilities commissioners of this state are not required by the statute conferring their powers to, in all cases, make an appraisement and valuation of the property of a trolley company in order to ascertain what increase in the rates to be charged for transporting passengers is reasonable to provide a sufficient revenue to meet the increased cost of operation due to the enhanced price of labor, materials and governmental imposition of taxes to meet the cost of the war with Germany.

2. Where the increase made in the rate, over what was formerly a reasonable charge, is only sufficient to prevent a deficit in operation because of new and extraordinary conditions, no useful purpose can be served by a valuation of all of the property of a public utility company, and it is not a prerequisite when the statute does not require it.

On *certiorari.* On appeal from the Supreme Court, whose opinions are reported in 92 *N. J. L.* 44, and *Id.* 61.

For the prosecutors, *Charles E. Bird, George L. Record* and *Marshall Van Winkle.*

For the board of public utilities commissioners, *L. Edward Herrmann.*

For the Public Service Railway Company, *Frank Bergen* and *Richard V. Lindabury.*

For the Trenton and Mercer County Traction Corporation, *Frank S. Katzenbach, Jr.,* and *Edward M. Hunt.*

The opinion of the court was delivered by

BERGEN, J. The three cases above referred to were argued together and the legal principles involved in each are sufficiently similar to permit their dispostion by one opinion.

Two writs of *certiorari* were allowed the prosecutor O'Brien, one to review an order made by the board of public utilities commissioners allowing the Public Service Railway Company to charge one cent for each transfer of a passenger from one of its cars to another, and the other to review an order allowing the same corporation to charge seven cents for each passenger carried until April 1st, 1919, and six cents thereafter. The third writ was allowed the prosecutor the city of Trenton to review an order made by the same board permitting the Trenton and Mercer Traction Corporation to charge six cents for each passenger and to discontinue the sale of six tickets for twenty-five cents, a practice theretofore followed by the traction company.

The orders under review were affirmed by the Supreme Court and the respective prosecutors have appealed from that judgment.

The concise question presented is, Has the board of public utilities commissioners, a state agent, the power to increase the rate to be charged for transportation service in order to produce a sufficient additional income to meet increased expense of operation growing out of the great advance in the cost of labor and material, principally due to conditions incident to our war with Germany, and if so, was such power lawfully exercised? Assuming that the rate of five cents existing prior to the new conditions was a reasonable one, then the application of ordinary common sense will unhesitatingly lead every fair-minded person to the conclusion that it would not continue to remain reasonable if the cost of production so advances as to destroy the basis upon which it was rested. The solution of such a proposition does not require the aid of legal learning; it is a question of economics which anyone of ordinary intelligence can apply.

The power to increase the rate; the reasonableness of the increase; the basis used in determining the question of rea-

sonableness; whether the rate is fair to the public in view of the service rendered, and was it lawfully arrived at, are the principal and controlling questions argued on this appeal. Upon the question of power the appellants argue that, where a state agency has by agreement with a public utility corporation fixed a rate, the power of the state to alter or modify that rate is irrevocably taken away, and that, however unjust to the public such a rate may be, the state is powerless to correct it, and that, on the other hand, no relief can be afforded to a public utility corporation, however unreasonable the rate agreed upon may be to the latter.

It is enough to say that this court, in two cases very recently decided, have affirmed the power of the state to alter the rate so as to make it a reasonable compensation for the service rendered, and a fair charge to the public therefor. In *Collingswood Sewerage Co.* v. *Collingswood,* 91 *N. J. L.* 20, it was held by the Supreme Court that the state, through its agent, had the power to increase the rates to be charged to property owners for the use of a sewage system, notwithstanding the fact that the ordinance of the municipality granting its consent fixed the maximum prices or rents that might be charged. This case was subsequently affirmed by this court. On the other hand, in *Atlantic Coast Electric Railway Co.* v. *Board of Public Utility Commissioners, ante* p. 168, this court held that the utility company was not protected against a reduction in the charge for transportation below that fixed by the ordinance consenting to the use of the public highway for street railway purposes. These two cases seem to foreclose any further discussion relating to the power of the legislature to fix reasonable rates to be charged by a public utility company, notwithstanding the fixing of a maximum rate by a consenting ordinance.

The law established by these two cases preserves to the state the power to protect the public against a rate which may have been unreasonable and unfair to the public when fixed by the municipality, or has become so because of changing conditions, or to increase the rate in favor of the serving company to one that is reasonable in view of the service ren-

dered. The same result was reached by United States Supreme Court in *Union Dry Goods Co.* v. *Georgia Public Service Corporation,* 39 *Sup. Ct. Rep.* 117 (decided January 7th, 1919), and in *People* v. *Public Service Commission (New York Court of Appeals),* 121 *N. E. Rep.* 777.

The next point is thus stated in the brief of the appellant: "Has the board a jurisdiction to fix a rate of fare to be paid by the public under the compulsion of the order of the board without the board finding on evidence that such rate is a fair rate of return on the value of the property of the railway used for, or useful to the public?"

Thus is challenged the power of the board of utility commissioners to increase or decrease a rate without a valuation of all the property of the corporation.

It is well to bear in mind that the statute under which the utility commissioners are acting does not require it to make an appraisement of the value of the property. It may be wise to do so in some cases, but it is not obligatory.

From time immemorial the legislature in granting charters to railroad companies has fixed the rates to be charged without the slightest consideration of the value of the property, because in most instances the property was not in existence to be valued when the rates were fixed, nor, so far as we know, has the right of the legislature to change rates by legislation been successfully assailed because there was no valuation of the property, unless it has been shown that the rates are confiscatory or unreasonable, and what the legislature may do it may delegate to its agent to do within the limits of the delegated power.

It will not, we apprehend, be claimed that the fixing of a rate of five cents to be charged to each passenger for transportation was the result of any valuation. That sum seems to have been accepted by the railway corporations and the public as a reasonable rate to be paid by the public for the services rendered under the normal conditions existing when the rate was established and, after so many years of the existence of such a rate without question, it must be assumed

that the public and the serving corporation have both acquiesced in the reasonableness of such a charge, and that its reasonableness has been demonstrated by experience. What the utilities board did in the case under consideration was to add to the existing rate a sufficient sum to meet the increased cost of operation due to increased taxes and labor cost imposed by the agencies of the national government to meet expenditures in the prosecution of the war with Germany, all of which was carefully ascertained through testimony showing that the increase was necessary to prevent a deficit in operation.

No question of interstate commerce is involved in the present litigation, for the rates fixed apply only to intrastate commerce, and in such case the rate-making power being legislative, necessarily implies a range of legislative discretion (*Minnesota Rate Cases*, 230 *U. S.* 352), and in the exercise of that discretion the state legislature is not bound in all cases to rest upon the physical valuation of property, otherwise, as we have said, the fixing of a rate in railroad charters, where no valuation can be had, would be illegal, which, so far as we know, has never been claimed, and granting, as we must, the power of the legislature to alter rates fixed by its agents, it is difficult to give any reason why the legislature could not increase the rates from five to seven cents, by a general law applicable to all the trolley companies in the state without any valuation of their property, and what the legislature may do in its discretion, it can authorize its agents to do, and it has not, by the statute under consideration, required its agent, in exercising its discretion, to value all the street railway properties owned by the companies to which this increase is permitted, and we can see no reason why the board of public utilities commissioners had not the power to provide for such an increase over the old rate as the admittedly new conditions, to which we have referred, require to make the new rate a reasonable one, in comparison with the one previously existing, to preserve the utility corporation from a deficit in operation.

All this is fully demonstrated in the report and findings of the utilities board in allowing the increase, and its repetition here will serve no useful purpose.

We are of opinion that under the facts shown in this case a valuation is not required by the law; that the board exercised a reasonable discretion within the legislative powers delegated to it, and that no more is exacted from the public than the services rendered are reasonably worth to it if they are to be efficiently served, or perhaps served at all.

All the other questions raised on the argument are sufficiently dealt with by Mr. Justice Swayze in the opinions read by him for the Supreme Court, and it is not necessary here to restate them.

.The judgments appealed from will be affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, MINTURN, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 9.

*For reversal*—THE CHANCELLOR, BLACK, WHITE, JJ. 3.