## CITY OF BARTLESVILLE v. CORPORATION COMMISSION.

No. 12066—Opinion Filed June 14, 1921.

(Syllabus.)

**1. Corporation Commission —Rate-Making —Notice to Parties Affected—Necessity.**

Rate-making being a legislative power, notice to parties affected by an order of the Corporation Commission temporarily increasing gas rates upon application of a public service company need not be given unless specifically required by the statute.

**2. Same—Waiver of Notice Required by Statute.**

Where a party is entitled by statute to notice, in a particular manner, of a rate-making order made by the Corporation Commission, he may waive the statutory manner of service by appearing and participating in the proceedings in which the order is made.

**3. Same—Power to Prescribe Temporary Rates.**

The rate-making power of the commission is not limited to any particular theory or method, and the commission may, if it has the necessary facts before it, prescribe a temporary schedule of rates to be effective until the commission has had time to make an investigation and a valuation of the property of the public utility.

**4. Same—Nature of Rate-Making Power.**

The power to regulate rates and charges rendered the public by public service corporations is inherent in the state, and is a necessary attribute of sovereignty.

**5. Constitutional Law — State Powers — Rate-Making.**

Section 7, article 18, of the Constitution of Oklahoma, expressly prohibits the surrender by the state government of the power to regulate the charges for public services.

**6. Gas—Rate Regulation—Corporation Commission—Powers of City Charters.**

The supreme legislature of the state having delegated the exclusive power of regulating rates for gas furnished by public utilities to the Corporation Commission, the state has such a sovereign interest in this subject of legislation as to preclude the cities of the state from entering this field by charter provisions or otherwise. ·

Original application for writ of prohibition by the City of Bartlesville against the State Corporaton Commission and the members thereof. Writ denied.

A. O. Harrison, for plaintiff.

E. S. Ratliff, for defendants.

KANE, J. This is an original application for writ of prohibition. The cause being presented upon the petition of the plaintiff and the return of the defendants, we must look to these pleadings alone in determining the questions presented for consideration.

From the petition it appears that the Bartlesville Gas & Electric Company filed an application before the Corporation Commission praying for an increase in gas rates in the city of Bartlesville, Oklahoma; that this cause was duly docketed as cause No. 4137 and set for hearing before the commission at 10 o'clock a. m. on the 7th day of December, 1920; that on the 15th day of December, 1920, the Corporation Commission entered temporary order No. 1825, establishing certain gas rates for the city of Bartlesville and authorizing the Bartlesville Gas & Electric Company to place said rates in effect from said date. It was then alleged, in substance, that the order of the Corporation Commission was void for the following reasons: (a) That said order was made without proper notice to the city of Bartlesville, only eight days being given, and that it was made without the necessary parties being in court; (b) that before fixing the rates named in order No. 1825 the Corporation Commission failed to find the valuation of the property of the Bartlesville Gas & Electric Company used in supplying gas to the city of Bartlesville, and therefore there was not sufficient evidence before said commission to form a basis for the order complained of; (c) that the city of Bartlesville has the exclusive power conferred upon it by the charter of said city, which was duly adopted and approved by the Governor of the state, to fix and regulate the rates to be charged for gas within such municipality. It is further alleged that the Corporation Commission intends to continue to enforce said unlawful and void order, and that said Bartlesville Gas & Electric Company intends to collect said unlawful and excessive rates and will continue to do so unless prohibited and restrained by this court, and that the enforcement of said order and the collection of said unlawful and excessive rates will result in irreparable injury and detriment to the city of Bartlesville and the citizens thereof. Wherefore it prays a writ of prohibition.

The response of the defendants, after admitting the allegations of the petition as to the commencement of the proceeding before the Corporation Commission and entering the temporary order increasing gas rates, further alleges, in substance, that although there is no statute, order, or regulation of the state of Oklahoma requiring notice to said city of such proceeding, the Corporation Commission, on the 27th day of November, 1920, placed in the United States mail copies of the application of the Bartlesville Gas & Electric Company, together with notice of the date of hearing thereof, addressed to the mayor, city attorney, and the chamber of commerce of the city of Bartlesville; that on the 7th day of December, 1920, the date said temporary order was entered, the city of Bartlesville appeared by the city attorney and moved the commission to require applicants to make their application more definite and certain, and prayed for a continuance and other relief; that after due hearing the commission sustained the motion in part and overruled the same in so far as it prayed for a continuance, in this wise, to wit: that said applicant was permitted to introduce its testimony and exhibits subject to further cross-examnation by the said city of Bartlesville or any other party, and thereupon set said cause for further hearing and on January 7th, to enable the said city to examine the evidence introduced by applicant and to prepare a response thereto; that thereafter, by different orders for continuance and further hearing, said cause was set for and heard in part on January 7th, January 24th, January 26th, and February 17, 1921, and is now set for oral argument together with other cases involving the same general subject-matter; that at each of said hearings the city of Bartlesville has been afforded an opportunity to be present, to examine or cross-examine witnesses, and to produce evidence, and has been present by its city attorney and has so participated therein; that at the hearing held on December 7, 1920, the Bartlesville Gas & Electric Company in open court made application for permission to install a temporary rate for gas; that upon the evidence then before it as to operating costs and expenses which was not then and is not now disputed, and its own records and files, the commission entered a temporary order, against which this application for a writ of prohibition is directed; that said order No. 1825 is temporary in its nature and intended only to relieve the pressing necessities of said company and to enable it to properly perform its public duties, and such order is and was subject to review and revision by

rebate of amounts collected or otherwise upon the final determination of this cause. The defendants admit that they did not, at the time of entering such order No. 1825, make a finding as to the value of the property of said company used and useful in its business, and does not understand that their jurisdiction to make a temporary and tentative rate order such as was made in such case is dependent upon first finding a valuation of the applicant's property when the evidence shows an operating loss and such order is subject to future revision when a final valuation and rate is made. Defendants further deny that their authority and jurisdiction to make orders affecting rates to be charged by public utilities operating wholly or in part in charter cities in this state is in any way affected, limited, or diminished by any provision of said city charter, and particularly by the provision of the charter of the city of Bartlesville relied upon herein. Defendants admit that they have no intention of altering or changing said order 1825 prior to the final submission and determination of said cause, and so far as they are advised, they assume that said Bartlesville Gas & Electric Company will, until otherwise ordered, continue to collect the rates thereby authorized. The defendants further allege that the applicant herein, although a party to the said cause before the commission, has not attempted to appeal from said order 1825, and deny that they are enforcing said order 1825, but allege the fact to be that said order is permissive only in its nature and has been already entered and that no appeal has been perfected therefrom, and that it is not such an order as calls for or permits an enforcement by the commission.

In the presentation of the case it seems that the allegations of the response are taken as true, and it is conceded the pleadings present for consideration the following propositions of law:

(1) Was the temporary order increasing rates void because not based upon sufficient notice?

(2) Was the temporary order void because the commission failed to find the valuation of the company's plant before entering the same?

(3) Is the sole power to fix the rate involved vested in the city of Bartlesville by the provisions of its charter which so provides, notwithstanding a conflicting state statute which vests the power in the Corporation Commission?

On the question of notice we are unable to find any constitutional provision or legislative enactment requiring notice to be served upon a municipality, as such, in a rate-making proceeding of this kind. Section 18, art. 9, Williams' Ann. Const. Okla., relied upon by counsel for plaintiff, requires no such notice. The first part of this section provides, in substance, that before the commission shall prescribe or fix any rate directed against any one or more companies by name, the company or companies to be affected by such rate shall first be given at least ten days' notice of the time and place the hearing shall be held. Conceding that the order complained of is directed against a company by name, clearly the plaintiff is not, by the terms of the provision, entitled to notice, and the company affected is not entitled to the prescribed notice because the order was entered upon the application of the company itself. Another part of the same section provides that before the commission shall make and prescribe any general order, rule, regulation, or requirement, not directed against a specific company by name, such order shall first be published in substance not less than once a week, for four consecutive weeks in one or more of the newspapers of general circulation published in the county in which the Capitol of this state may be located, together with the notice of the time and place when and where the commission will hear any objections which may be urged by any person interested, against the proposed order, rule, regulation, or requirement. As the present order necessarily affects the gas-using public, it probably falls more nearly under the purview of the latter part of the section. It will be observed that the first part of the section does not provide for serving notice upon any one except the company or companies to be affected, while the second part of the section provides for notice by publication where the order is general and affects the public at large.

It must not be overlooked that, rate-making being a legislative power, notice to parties affected by an order of the Corporation Commission temporarily increasing gas rates upon application of a public service company need not be given unless specifically required by the statute. Hine v. Wadlington, 27 Okla. 285, 111 Pac. 543; In re Intrastate Express Rates, 40 Okla. 237, 138 Pac. 382; Simpson v. Shepard, 230 U. S. 352. But, conceding that the municipal corporation was entitled to notice and to intervene in behalf of itself and its gas-using inhabitants for the purpose of urging objections against the proposed order, did not its appearance and participation in the present proceeding,

coupled with its motion for continuance, constitute a waiver of service of summons upon it in the particular manner prescribed by the act? We think it did.

The response of the defendant shows that notice was mailed on November 27th, for a hearing on December 7th. The petition admits that eight days' notice was had. The response shows that plaintiff's motion for a continuance of the whole cause on December 7th was denied, and that the company was permitted to introduce evidence, and then a continuance until January 7th was had to give the city an opportunity to prepare for cross-examination of the company's witnesses and to prepare its defense, and that thereafter various hearings were had in which the city participated. It seems clear to us that such appearance and participation in the proceedings waives the defect of notice complained of, if in fact there was any such defect.

The plaintiff's second ground for relief, that the temporary rate in question was made without finding the valuation of the company's property, is also untenable. In support of this contention counsel for plaintiff cites the case of Oklahoma City v. Corporation Commission, 80 Okla. 194, 195 Pac. 498, wherein it was held that the first essential in fixing rates is to determine the valuation of the property, and then to determine whether the rate is reasonable. We do not think this case is in point in the case at bar. The rule announced in that case is applicable where a reasonable return upon the investment is being sought by the public utility company. But this rule does not apply where, as in the case at bar, the commission by a temporary order is merely seeking to fix a rate that will pay operating expenses pending an application for a permanent increase of rates. Necessarily, before the commission can fix a rate for the purpose of allowing a reasonable return upon the entire investment of a public service company, valuation of the investment must be shown; but where the record shows an entire failure of the rate in force to pay the operating expenses of the company, and the temporary rate is fixed to enable the company to continue its public duties pending an investigation, it would be unreasonable to require evidence of the value of the company's property before such an order could be made.

In Re Intrastate Express Rates, 40 Okla. 237, 138 Pac. 382, it was held that a rate fixed upon the comparison of rate theory and not upon valuation would be upheld.

In Muskogee Gas & Electric Co. v. State, 81 Okla. 176, 186 Pac. 730, it was held:

"The rate-making power of the commission is not limited to any particular theory or method; and the commission may, if it has the necessary facts before it, prescribe a temporary schedule of rates to be effective until the commission has time to make an investigation and a valuation of the property of the public utility."

The following cases from other jurisdictions are in point to the same effect: O'Brien v. Board of Public Utility Com., 106 Atl. 414; Hartford v. Connecticut Co., P. U. R. 1918C, 611-26; In re City Light & Traction Co., P. U. R. 1918F, 938-43.

Article 11, sec. 6, of the city charter, under which it is claimed the city of Bartlesville has the exclusive right to regulate rates charged for public services by a gas company, reads as follows:

"The city of Bartlesville shall have the power by ordinance to fix and regulate, from time to time, reasonable rates, fares, tolls and charges, to be charged or exacted for public services by telephone, gas, electric light and street railway companies, and by any and all other persons or corporations operating under a grant, franchise or license from the city; and to prescribe the quality of the service; and the value of any franchise conferred by this city shall not be considered in the computation of what shall be considered reasonable rates for compensation."

It is claimed that, although the Legislature of the state by chapter 93, Sess. Laws 191, p. 150, conferred upon the Corporation Commission generally power to fix gas rates throughout the state, this act is superseded by the foregoing provision of the charter by virtue of section 3a of article 18, Williams' Ann. Constitution, which provides:

"Any city containing a population of more than two thousand inhabitants may frame a charter for its own government consistent with and subject to the Constitution and laws of this state. * * * Upon such approval it shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it."

This section of the Constitution was vitalized by section 539, Rev. Laws 1910, which provides:

"When a charter for any city of this state shall have been framed, adopted and approved according to the provisions of this article, and any provisions of such charter shall be in conflict with any law or laws relating to cities in force at the time of the adoption and approval of such charter, the provisions of such charter shall prevail and be in full force notwithstanding such conflict, and shall operate as a repeal or suspension of

such state law or laws to the extent of such conflict; and such state law or laws shall not thereafter be operative in so far as they are in conflict with such charter; Provided, that such charter shall be consistent with and subject to the provisions of the Constitution, and not in conflict with the provisions of the Constitution and laws relating to the exercise of the into the exercise of the initiative and referendum, and other general laws of the state not relative to cities of the first class."

In our judgment this contention is wholly untenable. It is based upon the assumption that fixing gas rates to be paid by the inhabitants of an incorporated city is a matter of such purely municipal concern that the supreme legislature has no interest therein superior to the interest of the chartered city. It has been held that charters adopted under this section of the Constitution can only run current to and never counter to the general laws of the state in the following circumstances: Touching control of the free public school system, in Board of Education of City of Ardmore v. State, 26 Okla. 366, 109 Pac. 563; touching local taxes for police protection, in Rogers v. Bass & Harbour Co., 64 Okla. 321, 168 Pac. 212; touching improvements of public streets and highways, in Coleman v. Frame, 26 Okla. 193, 109 Pac. 928; touching control of municipal police, in State v. Linn, 49 Okla. 526, 153 Pac. 526; touching taxation, in Thurston, County Treas., v. Caldwell et al., 40 Okla. 206, 137 Pac. 683. In all of these cases, and many others to the same effect which might be cited, it was held that, notwithstanding the municipal character of the subjects under consideration, the state has a sovereign interest in their management and control which cannot be interfered with by conflicting provisions of municipal charters. It seems to us that the reasoning upholding the ruling of the court in these cases inevitably leads to the same conclusion in the case at bar.

City of Pawhuska v. Pawhuska Oil & Gas Co., 64 Okla. 214, 166 Pac. 1058, affirmed by the Supreme Court of the United States in City of Pawhuska v. Pawhuska Oil & Gas Co., 250 U. S. 394. 63 L. Ed. 1054, is another case strongly in point. In that case the city of Pawhuska complained of an order of the Corporation Commission regulating the rates and services of a gas company engaged in supplying natural gas to the city and its inhabitants. The company had a franchise, granted by the city in 1909, which entitled it to have its pipe lines in the streets and alleys of the city, and which provided that the gas should be supplied at flat or me-

ter rates, at the option of the consumer, and that the rates should not be in excess of fixed standards. When the franchise was granted there was a provision in the state Constitution (article 18. sec. 7) reading:

"No grant, extention, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the state, or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment. Nor shall the power to regulate the charges for public services be surrendered; and no exclusive franchise shall ever be granted."

There also was a statutory provision, Rev. Stat. 1903, sec. 398 (Rev. Laws 1910, sec. 593), declaring:

"All such grants shall be subject at all times to reasonable regulations by ordinance as to the use of streets and prices to be paid for gas or light."

Subsequently, the state Legislature adopted an act (chapter 93, sec. 2, Sess. Laws 1913) which provides that the Corporation Commission shall have general supervision over all public utilities, with powers to fix and establish rates and to prescribe rules, requirements, and regulations affecting the services. It was under this act and after a full hearing on the petition presented by the gas company that the order in question in the principal case, as well as the order in the case at bar, was made. The order abrogated all flat rates, increased the meter rates, required that gas be sold through meters to be supplied and installed at the company's expense, and recited that the evidence produced at the hearing disclosed that the franchise rates had become inadequate and unremunerative, and that supplying gas at flat rates was productive of wasteful use. Dealing with this contention the state court, while fully conceding that the early statute delegated to the city the authority claimed by it, held that this delegation was to endure only until such time as the state saw fit to exercise its paramount authority; that under the Constitution the Legislature could withdraw that authority from the city whenever in its judgment the public interest would be subserved thereby, and that it was effectively withdrawn from the city and confided to the Corporation Commission by the act of 1913, supra.

In another case, South McAlester-Eufaula Telephone Co. v. State ex rel. Baker-Reidt Mercantile Co. et al., 25 Okla. 524, 106 Pac. 962, it was said:

"That the power to regulate the charges for public service by municipal corporations

is a power which it was the intention of the framers of the Constitution should be exercised by the sovereign power only is further evidenced by section 7 of article 18, entitled 'Municipal Corporations,' which provides that: 'No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality shall divest the state or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment. Nor shall the power to regulate the charges for public service be surrendered, and no exclusive franchise shall ever be granted.' "

The supreme legislature of the state having seen fit to place the power of regulating rates for gas furnished by public utilities in the Corporation Commission, in our judgment the state has such a sovereign interest in this subject of legislation as to preclude the chartered cities of the state from entering the field by charter provisions.

For the reasons stated, the writ of prohibition is denied.

HARRISON, C. J., and JOHNSON, MILLER, and KENNAMER, JJ., concur.