**WESTERN MOTOR FREIGHT, INC.,**
**Appellant,**

v.

**STATE of Oklahoma et al., Appellees.**
**No. 47320.**

Supreme Court of Oklahoma.

April 22, 1975.

Rufus H. Lawson, Max G. Morgan, T. M. Brown, Oklahoma City, for appellant.

Dykeman, Williamson & Williamson, by G. Timothy Armstrong, Oklahoma City, for appellees.

BERRY, Justice:

This is an appeal by Western Motor Freight, Inc., appellant herein, from order of Corporation Commission.

Maurice Smith Ausley, II, doing business as Ausley Motor Freight, applied for authority to operate as a regular route motor common carrier, in intrastate and interstate commerce, over the following routes:

[1] Between Gotebo, Oklahoma, and Snyder, Oklahoma, over fixed route serving intermediate points of Lone Wolf, Granite, Hollis, Duke, and Altus, Oklahoma, and off-route points of Hobart, Mangum, Olustee, and El Dorado, Oklahoma;

[2] Between Gotebo, Oklahoma, and Frederick, Oklahoma, over fixed route serving intermediate points of Babbs, Roosevelt, Mountain Park and Snyder, Oklahoma, in addition to points presently authorized to be served;

[3] Between Mangum and Duke, Oklahoma;

[4] Between Lone Wolf and Altus, Oklahoma, serving intermediate points of Blair and Lugert, Oklahoma;

[5] An alternative route between Oklahoma City and Elgin, Oklahoma, serving no intermediate points;

[6] An alternative route between Oklahoma City and Altus serving no intermediate points.

In his application Ausley further requested the Commission unitize the new authority with prior authority held by Ausley so as to permit through service from Oklahoma City to towns in the new service area.

Hearing was held and Western appeared and protested the application.

Western had prior authority to operate over same routes and had authority to conduct through operation from Oklahoma City to cities and towns within the new service area.

The Commission entered its order No. 103149 granting Ausley the new authority. It subsequently entered its order No. 103352, correcting order No. 103149 to provide that the new authority was unitized with prior authorities held by Ausley.

On appeal Western first contends the proceedings before the Corporation

Commission were void ab initio for lack of proper and required notice to the public.

47 O.S.1971 § 166, provides in part:

"In order for the public and all interested parties to receive proper notice, in addition to any notice the Commission may prescribe, the Commission shall circulate, on its own docket form, notice of all applications for * * * certificates * * * to operate as a motor carrier which have been filed and are pending. Such notice shall be published at least fifteen (15) days prior to the date of hearing and shall show * * *"

Western does not contend the Commission failed to comply with the notice requirements of the statute, but does contend the Commission failed to comply with its rule which requires notice of application relating to motor carrier authority to be published in a newspaper "published in the county seat or largest city of each county in which is located a city, or town proposed to be served."

Notice of the application and hearing was published in Harmon, Greer, Jackson, Kiowa, Comanche, Caddo and Grady Counties.

Western contends Ausley sought new routes to new points from towns presently served in Tillman, Oklahoma, Canadian, and Cleveland Counties and contends the Commission's rule requires notice of application and hearing to be published in these counties.

It contends failure to publish the notice in these counties deprived the public of its opportunity to appear at hearing, and, even though Western may have waived its right to object to lack of notice, the public has not waived its right to notice.

Ausley contends the rule does not require publication in the named counties because he does not propose to serve any new cities or towns in these counties. He further contends Western has waived its right to raise this objection.

We conclude Western has waived its right to raise this objection.

Two separate hearings were held before a referee and the case was then argued before the Commission. Western's officers and attorney participated in such proceedings without raising issue of lack of notice.

In Oklahoma Users, etc. v. Southwestern Bell Tel. Co., Okl., 289 P.2d 968, we stated:

sion, 82 Okl. 160, 199 P. 396, followed in guish this case, on principle, from City of Bartlesville v. Corporation Commission, 82 Okl. 160, 100 P. 396, followed in Consumers' Gas Co. v. Corporation Commission, 95 Okl. 57, 219 P. 126 * * * There * * * this Court held that the appellant's participation in the hearing, out of which the order issued, constituted a waiver of the 'defect of notice', if any. Protestants make no effort to distinguish the facts in this case * * * and we see no such distinction. If Order No. 29443 be considered a general order for which the constitutional provision * * * requires publication notice, it may be doubted that such order is valid without that notice, or that such defect can be waived for the public by litigants such as the Protestants herein. However, on the basis of the Bartlesville Case and under the rule that a litigant cannot try a case in this Court on a theory foreign, or altogether different, from that on which it was tried in the trial tribunal * * * we do not think the proposition relied on by Protestants for reversal is now before us. Nor do we think Order No. 29443 should herein be disturbed on that ground."

Western next contends the Commission's order is not supported by substantial evidence.

In this regard it contends 47 O.S.1971 § 166, creates a presumption, in absence of competent evidence to the contrary, that intrastate carriers operating under existing certificates are rendering adequate service between points, or within areas, authorized to be served by them. It further contends the statute imposes burden of proof to show otherwise upon the applicant.

Under this contention it argues there was no substantial evidence to support the order insofar as it unitized new authority with prior authorities so as to allow Ausley to provide through service from Oklahoma City to points within the new service area.

In this regard it argues the major issue in the proceedings was rapidity of service available from Western.

Two businessmen from Altus, four from Snyder, one from Hollis, and one from Mountain Park testified average delivery time from Oklahoma City aboard Western was between 4 and 14 days with some deliveries taking up to 20 days. Their testimony was to effect they specified delivery by an express company which served area if they needed fast delivery and this was not satisfactory because express company charged higher rates for shipments over 200 pounds.

The Secretary for the Retail Merchants Association in Mangum, Oklahoma, [who was also manager of the town Chamber of Commerce] presented a resolution signed by 12 retail merchants in Mangum. The resolution stated need for freight truck service to Mangum and Greer counties, that Western's service was insufficient, and requested Ausley's application be granted.

A sales representative from a paper company in Oklahoma City testified shipments into area averaged seven days for delivery with some taking as long as ten days. He testified paper products are bulky and customers need to receive them on regular basis due to storage problems. He testified competition owns own trucks and customers will purchase from competition if his company is unable to deliver. In some instances he used express company into area at customers' request, but express company was more expensive for shipments over 200 pounds.

A vice president of hardware wholesale company in Oklahoma City testified his company shipped about 10,000 pounds a week into the area and was forced to ship many shipments through the express company due to lack of adequate service by Western. His company was forced to pay extra cost of express service in order to keep customers from buying elsewhere. As a result of this freight costs into this area was 2.27 per cent per dollar sale which was higher than any other area in state. The average rate was 1.21 per cent, the average rate for similar territories was 1.33 per cent, and the highest rate elsewhere was 1.81 per cent for the eastern part of state.

A representative from a concern which manufactures florist products in Hobart testified it shipped products out on a seasonal basis and had difficulty in getting Western to pick up products. This resulted in part from fact Western's agent did not have a telephone. He also testified Western tended to deliver at around 5:00 P.M. causing need to keep someone on overtime to assist in unloading and that on one occasion Western left freight on truck in Hobart for week or ten days.

All of witnesses testified Western's service had improved during weeks preceding hearing and they would support Ausley if application was granted.

Western contends most of these witnesses testified from recollection without documentary substantiation and their testimony cannot be considered substantial evidence when compared to the documentary evidence supplied by it.

It contends its documentary evidence indicates most deliveries from Oklahoma City to the witnesses from January 1, 1973, until September 30, 1973, were same day or overnight delivery. In this regard it contends 48% of deliveries were delivered the same day or overnight, 22% were delivered with one day in transit, 11% were delivered with two days in transit, 6% were delivered with 3 days in transit, and 13% were delivered with 4 or more days in transit.

We first note Western's computation of delivery time excluded the day the shipment was picked up by Western, excluded the day the shipment was delivered by

Western, and excluded all intervening Saturdays, Sundays and Holidays.

This exhibit does indicate most shipments were delivered overnight, or within two or three days, but also indicates numerous deliveries were slow, and some very slow, in arriving at their destination.

Western's evidence indicates some delays resulted from fact it only furnished one day a week service to certain towns and other delays were caused by fact no one was present when it sought to deliver freight.

It also introduced evidence its agent in Hobart has two telephones but neither is listed under Western's name.

In Lee Way Motor Freight, Inc. v. State, Okl., 386 P.2d 1021, various persons told of delays in receiving shipments, other witnesses testified they would use the new service if the permit were granted, and Board of Directors of Chamber of Commerce voted to support the application.

There we stated:

"Lee Way's main argument is that Hodges' witnesses had very little documentary evidence of the poor and delayed service rendered by Lee Way. Lee Way states that Hodges' evidence was so lacking in 'specificity' that it had little probative value. We have not said in our previous opinions that complaints against a carrier must be documented in order for evidence to be of a substantial nature. In Chicago, R. I. & P. Ry. Co. v. State, 126 Okl. 48, 258 P. 874, we indicated our displeasure with evidence which consisted principally of generalities and conclusions, rather than a narration of facts. However, we affirmed the order of the Corporation Commission in that case. * * * The case of Application of Choctaw Exp. Co., 208 Okl. 107, 253 P.2d 822, is in point on both the facts and law. In that case we summarized the testimony of four business men who testified * * * existing carriers did not give adequate service. Such evi-

dence was not documented. Other merchants testified they would use applicant's facilities if it received permit. That evidence met the requirement of being substantial evidence. The evidence here is of like kind."

We conclude this contention is without merit.

Western next contends the application sought authority to provide service over designated routes, essentially between Gotebo, Hobart, Mangum, Hollis, Altus and Snyder, Oklahoma, and sought to unitize this authority with prior authorities so as to provide through service from Oklahoma City to the towns in the new area. It contends all of the witnesses representing potential users of the service testified only concerning need for through service; there was no evidence of need for service between towns within the new area; and therefore the order is not sustained by substantial evidence insofar as concerns local service between towns in the new service area.

In support of this Western cites Enid Transfer & Storage Co. v. State, 201 Okl. 274, 190 P.2d 150, wherein the applicant held certificate of authority authorizing him to transport freight from Enid through Kingfisher and another authorizing transport of freight from Kingfisher to Oklahoma City. There this Court held the Commission could not unitize the authorities to permit delivery from Oklahoma City to Enid, through Kingfisher, without a finding that public convenience and necessity required service from Oklahoma City to Enid.

That case is distinguishable from the present case in that here evidence supports the finding through service from Oklahoma City to cities and towns in new area is required by public convenience and necessity.

Furthermore, even though the evidence refers to through service from Oklahoma City, it tends to establish inadequacy of

Western's service throughout the new service area.

We conclude this contention is without merit.

Corporation Commission's Order No. 103149, as amended by Order No. 103352, is affirmed.

All Justices concur.