FIDELITY TITLE & TRUST CO. v. KANSAS NATURAL GAS CO. et al.

McKINNEY v. KANSAS NATURAL GAS CO.

(District Court, D. Kansas, First Division. July 24, 1913.)

No. 1351.

1. COURTS ⬅500 — FEDERAL COURTS — PROPERTY — RECEIVERS — PROTECTION AGAINST INTERFERENCE.

Judicial Code, § 65 (Act March 3, 1911, c. 231, 36 Stat. 1104 [Comp. St. 1913, § 1047]), providing that when in any cause pending in any court of the United States there shall be a receiver in possession of any property he shall manage and operate the property according to the requirements of the valid laws of the state in which the property is situated, does not restrict the powers of a federal court to preserve property in the custody of its receiver from external attack.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1407, 1408; Dec. Dig. ⬅500.]

2. GAS ⬅1—PIPE LINE COMPANIES—REGULATION.

Where a foreign corporation admitted to do business in a state and engaged in the business of obtaining supplies of natural gas, transporting it by pipe lines to various cities in such state and other states and

selling it to local public service corporations or manufacturing plants, though granted the right of eminent domain, was not by any specific contract or charter provision granted an exclusive right so as to imply a contract to supply the full needs of those depending on it, while, so far as it availed itself of the permission granted it by the state, its property was affected by a public interest, its use of the property was subject to valid state regulation, and it could not, with respect to property devoted to this quasi public service, abandon that service, it could not be compelled by the state public utilities commission to extend its lines to new gas fields so as to constantly furnish an adequate supply of gas.

[Ed. Note.—For other cases, see Gas, Dec. Dig. ☜1.]

3. COMMERCE ☜61—"INTERSTATE COMMERCE"—STATE REGULATION.

A state public utilities commission could not order a pipe line corporation to extend its lines to new gas fields, where the extensions directed were in another state, as the building of pipe lines and the transportation of gas from such other state into the state in question was "interstate commerce," and the order directly regulated such commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 81–84, 89; Dec. Dig. ☜61.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

4. RECEIVERS ☜92—ADMINISTRATION OF PROPERTY—NEW ENTERPRISES.

While a court may authorize the receiver of a corporation appointed by it to undertake a new and extensive enterprise, it should do so with great caution and only under exceptional circumstances, especially where this must be done at the expense of the bondholders of an insolvent corporation against their protest.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 169; Dec. Dig. ☜92.]

5. RECEIVERS ☜92—ADMINISTRATION OF PROPERTY—NEW ENTERPRISES.

Where the receiver of a pipe line corporation could build a proposed extension of its pipe lines economically only by removing and relaying a pipe line which had become useless, and which, by an order from which an appeal was pending, the receiver had been directed to deliver to receivers appointed by a different court, the extension would not be authorized.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 169; Dec. Dig. ☜92.]

6. RECEIVERS ☜92—ADMINISTRATION OF PROPERTY—NEW ENTERPRISES.

Where the rates which a pipe line corporation was authorized to charge for gas by a state public utilities commission precluded the earning of interest on such corporation's bonds, a receiver of the corporation would not be authorized to expend money in his hands for the purpose of extending its pipe lines, thereby depriving the bondholders of the security of such money, though the property may have been bonded for a sum exceeding its value and cost so that the inability to earn interest did not establish that the rates were unreasonably low.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 169; Dec. Dig. ☜92.]

7. RECEIVERS ☜92—ADMINISTRATION OF PROPERTY—NEW ENTERPRISES.

The receiver of a pipe line corporation would not be authorized to build a proposed extension of its pipe lines, thereby incurring an indebtedness to be met out of future anticipated earnings, or out of the corpus of the estate, where the continuance of the property in the hands of the receiver could not be counted on so as to authorize expenditures based on future earnings.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 169; Dec. Dig. ☜92.]

In Equity. Suits by the Fidelity Title & Trust Company against the Kansas Natural Gas Company and another, and by John L. McKinney against the Kansas Natural Gas Company. On application by receivers heretofore appointed for the Gas Company for directions as to complying with an order of the Kansas Public Utilities Commission. Receivers ordered not to comply with such order.

See, also, 206 Fed. 772.

Chas. Blood Smith, of Topeka, Kan., for complainant Fidelity Title & Trust Co.

John J. Jones, of Chanute, Kan., and John F. Philips, of Kansas City, Mo., for defendants.

John H. Atwood, of Kansas City, Mo., Chester I. Long, of Wichita, Kan., O. P. Ergenbright and T. S. Salathiel, both of Independence, Kan., and John S. Dawson, Atty. Gen., for State of Kansas, intervening.

MARSHALL, District Judge. On July 10, 1913, the public utilities commission of Kansas made an order that the receivers heretofore appointed by this court of the property of the Kansas Natural Gas Company be directed to make certain extensions of the pipe lines of said company, which extensions were specified in the order, and to begin contracting for and the purchase of material to carry into effect the order on or before the 17th day of July, 1913. The work ordered to be done was estimated by the commission to cost from $285,000 to $300,000. The receivers have applied to the judge of this court for direction as to their duties with respect to this order. The validity of the order is a fundamental consideration. The Kansas Natural Gas Company is insolvent. Its property is in the hands of receivers in a suit to foreclose a first mortgage to secure bondholders. The receivers were, however, originally appointed in an administration suit. The order of the commission directs a large expenditure of money now in the hands of the receivers, the making of certain specific contracts, and the building of new pipe lines.

[1] It is evident that administration by the court through its receiver of an insolvent corporation will be rendered difficult, if not impracticable, if the receiver be subject to orders of distinct tribunals in the administration of this trust. This result is, however, claimed to ensue from section 65 of the Judicial Code, which in substance provides that a receiver appointed by a United States court shall manage the property in its possession "according to the requirements of the valid laws of the state in which such property shall be situated." But, as stated in Re Tyler, 149 U. S. 182, 13 Sup. Ct. 785, 37 L. Ed. 689, this provision does not restrict the powers of a federal court to preserve property in the custody of its receiver from external attack. In this case it is not necessary to decide this conflict of administrative power.

[2] The Kansas Natural Gas Company is a foreign corporation. It was duly admitted to do business in Kansas. The business it was authorized to do and was in fact engaged in was the obtaining of supplies of natural gas by purchase or by lease of wells and the transportation of this gas by pipe lines to various cities in Kansas and adjoining states,

where it was sold to local public service corporations or to manufacturing plants. It was not a common carrier, but it was granted the right of eminent domain, and its business was such as to give the public an interest in it. By reason of its entry into Kansas and the grant to it of the right of eminent domain, it entered into an obligation to the state to the extent of and with respect to its property devoted to this quasi-public service that prevented its abandonment of that service. The bondholders took their mortgage with notice of this fundamental obligation and subject to it. On foreclosure, the purchaser must buy the property subject to the same duty. The state, because of the public interest, has the power to prescribe reasonable rates for gas sold and to secure the efficiency of the service by reasonable regulations, and it is not to be doubted that a receiver of the property of the corporation must operate it in accordance with valid state laws in respect thereto. But what are the limits of the duty to the state or public? There was no specific contract or charter provision, no exclusive right granted so as to imply a contract to supply the full needs of those depending on the monopoly and for whose interest the grant was made. The action of the state was only permissive. The company was not obligated to build any pipe line or to furnish any gas. So far as it availed itself of this permission, its property used for the quasi-public service was affected by the public interest, and its use of the property in this business was subject to valid state regulation, but it did not become a mere agency of the state, and was under no obligation, contractual or other, to increase its investment or build new lines. It did not manufacture gas. It purchased wells and transported gas by pipe line. These wells were gradually exhausted. The lines were extended and more distant wells obtained until the system extended into several states. The security of the bondholders is constantly dissipated by the consumption of the property, and this method has led to the insolvency of the corporation. If by its entry into Kansas the company entered into an obligation to constantly buy new wells and extend its lines to new gas fields so as to constantly furnish to the cities of Kansas an adequate supply of gas, the security of the bondholders was, indeed, illusory. The undertaking was one necessarily ending in bankruptcy.

It is well settled that a railroad company chartered to build a particular line under a permissive charter is not liable to the state for a failure to build it, and that only so far as it does build is its property affected by the public interest. York, etc., Ry. v. Regina, 1 El. & Bl. 858, 864; Edinburgh, etc., Ry. Co. v. Philip, 2 Macqu. App. Cas. 526; State v. Southern Minn. R. R. Co., 18 Minn. 40 (Gil. 21); Weymouth v. Penobscot Log Driving Co., 71 Me. 29. And a fortiori, that such a company cannot be required to construct a new or branch line. I know of no reason why this well-settled principle is not applicable in this case.

[3] Considered apart from a contract right, the want of power is still clearer. The extensions directed are in Oklahoma; the receivers are ordered by the commission to go into Oklahoma and there build pipe lines, procure gas, and transport it into Kansas for sale. This is interstate commerce. The power to order it is an undoubted regulation of this commerce, direct in its nature, and thus beyond the scope of

state action. Oklahoma v. Kansas Natural Gas Co., 221 U. S. 229, 31 Sup. Ct. 564, 55 L. Ed. 716, 35 L. R. A. (N. S.) 1193.

[4] I am of the opinion that the order of the commission is without legal efficacy, but it is urged by counsel appearing for the commission, and for certain cities interested as gas users, that, even if the order of the commission exceeds its authority, yet this court, in the exercise of its discretion, should make an order to the same effect. The power of the court to so do must be admitted. The power to construct new lines and undertake a new and extensive enterprise by a court through the medium of a receiver is one to be exercised with great caution, and only under exceptional circumstances. It is rare indeed that it should be done at the expense of the bondholders of an insolvent corporation against their protest. In Kennedy v. Railroad Co., 5 Dill. 592, Fed. Cas. No. 7,707, Judge Dillon made the consent of the bondholders a condition, and his order is a precedent entitled to great respect.

[5] In the case we are now considering, the bondholders protest against such an order. But there are other insuperable objections:

1. The only proposed extension deemed reasonably practicable is the first alternative extension specified in the order, viz., the extension to the Cushing field. The cost of the entire extension is prohibitory. But it is said that the proposed vendors of the gas are willing to build a large part of the pipe line at an estimated cost to them of $500,000, so that the cost to the trust estate will be brought within the limit of the estimate of the commission. As a condition of this expenditure by the vendors and of the procuring of the gas, a valid contract is demanded obligating the receivers for a period of several years to purchase this gas and to pay therefor a relatively high price. To build that part of the line economically which is required of the receivers would necessitate removing from the state of Kansas of a pipe line of equal length now rendered useless and the relaying of it in Oklahoma. I have heretofore held that all of the property of the Kansas Natural Gas Company within the state of Kansas must be delivered to receivers heretofore appointed by the state court of Montgomery county, Kan. This order has been appealed from, and its effect superseded. When the appeal is decided, and if the order be affirmed, it must be complied with, and precludes the removal of the pipe line and the entering into any long term contract, such as the one demanded in this case.

[6] 2. The order made by the commission amounts to the taking of property for public use, and the question of just compensation at once arises. The commission, acting within its jurisdiction, has limited the rates to be charged for gas by the receivers of the court. It is claimed by those receivers that the rates as so limited produce no just return on the property involved, and are confiscatory. Certain it is that, considering the interest on the bonds of the company, each year's operation under the present rates involves a deficit, in addition to the exhaustion of the corpus of the property. Under the order of this court, experts selected by the receivers examined this property and reported in substance that the prescribed rates would not yield any fair return. On the other hand, the finding and order of the commission is entitled to respect, and, not having heard the evidence, I am unable to determine

that the rates prescribed by the commission are unreasonably low. It may be that the property affected with the public interest has been bonded for a sum exceeding its value and cost. If this be true, the fact that the limit of rates fixed precludes the earning of interest on the bonds does not determine the question. But the money now in the hands of the receivers, the result of the operations of the property, is subject to the payment of the costs of the operation, and the cost of the receivership, a security of the bondholders, and brought under the lien of their mortgage. I am not justified against their will in depriving them of it in any undertaking which does not secure to them an adequate return. I am not satisfied that the rates now prescribed will insure this return. Experience has demonstrated the contrary.

[7] 3. The larger part of the funds now in the hands of the receivers is claimed on account of rental by the Kansas City Pipe Line Company. This claim is now pending in this court. If it be valid, it will render it impossible to undertake the proposed extension without incurring an indebtedness to be met out of future anticipated earnings or out of the corpus of the estate. The continuance of the property in the hands of the receivers of the federal court cannot be counted on so as to authorize expenditure based on future earnings.

From these considerations, I have reached the opinion that I am not justified in ordering these extensions under present conditions, and the receivers are directed not to comply with the order of the commission with respect thereto.