## EAGLE-PICHER LEAD CO. et al. v. HENRYETTA GAS CO. et al.

No. 11228—Opinion Filed June 9, 1925.

Rehearing Denied Sept. 22, 1925.

1. **Gas—Rate Regulation by Corporation Commission—Notice of Temporary Increase Unnecessary.**

Rate making being a legislative power, notice to parties affected by an order of the Corporation Commission temporarily increasing gas rates upon application of a public service company need not be given unless specifically required by the statute.

2. **Same—Power of Commission Regardless of Contract.**

The Corporation Commission of the state of Oklahoma has power to increase or decrease rates fixed by a contract for natural gas furnished by a producing company transported through pipe lines owned and controlled by said company to the owners of a smelter without regard to the contract or the purposes or intentions of the contracting parties.

3. **Same.**

A public utility cannot avoid or escape the jurisdiction and control of the Corporation Commission by entering into special contracts with private manufacturing enterprises, concerning the price of gas consumed by such enterprises, upon the theory that the gas so provided is surplus, in excess of the amount necessary to supply the demands of the domestic customer.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Appeal from Order of Corporation Commission.

From an order of the Corporation Commission increasing the rates for gas furnished by Henryetta Gas Company et al. to Eagle-Picher Lead Company and another, the latter appeal. Affirmed.

John F. Goshorn, Shell S. Bassett, and Asp, Snyder, Owen & Lybrand, for appellants.

W. H. McClarin and Ames, Chambers, Lowe & Richardson, for appellees.

Opinion by JONES, C. This is an appeal from an order of the Corporation Commission of the state of Oklahoma fixing the rate to be charged for gas supplied to the appellees by the appellants, wherein the Commission increased the rate from four cents per thousand to approximately seven cents per thousand.

The questions raised by the appellants are: First, that the Commission was without authority to make the order for the reason that the Okmulgee Producing & Refining Company was not a party to the proceeding, and was given no formal notice of the same; that the said refining company was a necessary party for the reason that the increase in gas rates fixed by the Commission resulted in the abrogation of certain contracts binding upon the Okmulgee Producing & Refining Company; and, second, that the Corporation Commission was without jurisdiction to consider this cause or make the order herein complained of for the reason that appellants have no contractual relationship with appellees or either of them; that its only relationship, contractual or otherwise, was with a purely private corporation which is not a party to the proceeding; and, third, appellants contend that the subject-matter of such contracts, namely, the disposition of the residue or surplus gas remaining after the pub-

lic has been supplied, does not, and cannot affect the public interest, and therefore the Commission is without jurisdiction to fix or regulate the price thereof.

The facts, as disclosed by the record, show that in 1905 the town of Henryetta, then Indian Territory, granted to John Smith, for himself and partner, J. B. Swan, a franchise for the supplying of natural gas to the inhabitants and industries of said town. Under this franchise Smith and Swan constructed a natural gas distributing system in the town of Henryetta and operated same for a number of years as a partnership, known as the Smith & Swan Gas Company; the said partnership was composed of John Smith and J. B. Swan; said Smith and Swan, under their general partnership arrangement, held a number of gas leases, six or seven miles from the town of Henryetta, upon which they had developed gas in commercial quantities, and were seeking an outlet or market for same in securing the franchise from the town of Henryetta. The said Smith and Swan organized a corporation, known as the Henryetta Gas Company, in which corporation the partners, Smith and Swan, owned all of the stock; said corporation constructed a pipe line from the gas fields and wells owned and operated by Smith and Swan to the town of Henryetta, and also laid distributing systems in a number of unincorporated towns along its pipe line, and connected with the distributing system in the town of Henryetta, which had been constructed by Smith and Swan, under the franchise heretofore referred to.

The facts, briefly stated, are that the gas leases and gas wells, the distributing system in the town of Henryetta, and the transportation system from the gas fields through the unincorporated towns and to Henryetta all belong to, and were under the control and supervision of, Smith and Swan, also the distributing systems in all of the unincorporated towns were constructed, owned, and operated by Smith and Swan.

In 1916, the appellant Eagle-Picher Lead & Zinc Company entered into a contract with Smith and Swan, as a copartnership, whereby said Smith and Swan were to furnish gas for the operation of a smelter at four cents per thousand cubic feet, which gas was to be produced from lands on which the said Smith and Swan owned, or controlled gas rights within a radius of ten miles of said smelter; the contract further provided that like all other industrial consumers its right to gas should be subordinate to the requirements of the domestic consumers in the towns and cities which

Smith and Swan supplied, and that the gas was to be furnished to the smelter, subject to the lawful regulations of the Corporation Commission and the laws of the state of Oklahoma. A short time after entering into the contract above referred to Smith and Swan entered into a similar contract with the other appellants herein named, and with various other concerns of a similar nature. All of these industries were located along the right of way of the pipe lines heretofore referred to, leading from the gas field to the town of Henryetta, and the gas furnished to these appellants was transported and received by the said appellees through said pipe line.

In July, 1917, the Okmulgee Producing & Refining Company, a corporation, purchased the entire properties involved, heretofore referred to, from Smith and Swan, the copartnership. Subsequently, the Okmulgee Producing & Refining Company incorporated the distributing system in the town of Henryetta, calling it the Henryetta Public Service Company, one of the appellees here. All of the stock of this corporation was owned by the Okmulgee Producing & Refining Company, who controlled and operated same in connection with the other properties heretofore referred to, in the same manner and for the same purpose as operated by Smith and Swan. The same persons constituted the officers in the Okmulgee Producing & Refining Company, the Henryetta Gas Company, and the Henryetta Public Service Company, the parties who owned and controlled the Okmulgee Producing and Refining Company owned and controlled the other companies, just as the properties were owned and controlled by Smith and Swan. The Okmulgee Producing & Refining Company, in purchasing the properties from Smith and Swan, did not assume the performance of any contracts which Smith and Swan had made, although for sometime thereafter gas was furnished to the smelters, gins and refining companies, including the appellants herein, at the rates at which Smith and Swan had previously furnished it. Subsequently, the Okmulgee Producing & Refining Company, the Henryetta Gas Company, and the Henryetta Public Service Company, finding that they were operating at a loss, decided that it would be necessary to have an increase in the price of gas, whereupon negotiations were had between the companies and the smelters, appellants herein; and it seems that no satisfactory agreement could be reached, hence this proceeding was filed before the Corporation Commission and resulted in an order from the Commission fix-

ing the minimum rate for gas at 7.78 cents per thousand cubic feet with a discount of ten per cent. thereof if paid on or before the 10th day of the month, following that in which the gas was due. From which order this appeal is prosecuted by the appellants herein; and in their brief they have asserted that their alleged contracts with Smith and Swan were and are inviolable and that the Corporation Commission has no power to fix and prescribe the rate which the appellants should pay for gas. Appellants do not allege that the rates fixed are unreasonable or excessive, but merely attack the jurisdiction of the Commission to fix the rate at all, under the circumstances.

Section 19 of article 9 of the Constitution of the state provides that the Corporation Commission may be vested with such additional powers and charged with such other duties as might be prescribed by law, in connection with the visitation, regulation, or control of corporations, or with the prescribing and enforcing of rates and charges to be observed in the conduct of any business where the state has the right to prescribe the rates and charges in connection therewith. Under this provision of the Constitution the first Legislature of the state of Oklahoma enacted section 8235, Rev. Laws 1910, providing therein that:

"Whenever any business, by reason of its nature, extent, or the existence of a virtual monopoly therein, is such that the public must use the same, or its services, or the consideration by it given or taken or offered, or the commodities bought or sold therein are offered or taken by purchase or sale in such a manner as to make it of public consequence or to affect the community at large as to supply, demand or price or rate thereof, or said business is conducted in violation of the first section of this article, said business is a public business, and subject to be controlled by the state, by the Corporation Commission or by an action in any district court of the state, as to all of its practices, prices, rates and charges. And it is hereby declared to be the duty of any person, firm or corporation engaged in any public business to render its services and offer its commodities, or either, upon reasonable terms without discrimination and adequately to the needs of the public, considering the facilities of said business."

Thereafter, the Legislature of 1913 enacted chapter 93, Sess. Laws 1913, page 150, defining public utilities and giving to the Corporation Commission of Oklahoma general supervision over them, with power to fix and establish rates and to prescribe rules, requirements, and regulations affecting their services, operation, and the management and conduct of their business, and giving to the Commission all additional, implied, and incidental powers which might be necessary or proper to carry out, perform, and execute all the powers in said act enumerated. The act, in defining a public utility, included corporations or individuals engaged in the conveyance of gas by pipe lines, and who are engaged in the production, transmission, and control or furnishing of heat or light with gas. This court, in construing the act of 1913, in Guthrie Gas, Light & Fuel Company v. Board of Education, 64 Okla. 157, 166 Pac. 128, held that under said act the Corporation Commission was empowered and invested with the authority to make all valid and lawful orders prescribing rates which the state, in the exercise of its sovereign capacity, could prescribe or make. And this doctrine has been reaffirmed in the case of City of Pawhuska v. Pawhuska Oil & Gas Co., 64 Okla. 214, 166 Pac. 1058.

The first contention urged by appellants is that the Corporation Commission was without authority to act for the reason that no formal notice was issued to the Okmulgee Producing & Refining Company, and that they were necessary parties to the proceedings. Under the procedure adopted by the Corporation Commission in the trial of such causes, no specific form of formal pleadings is required; the one thing essential to give jurisdiction is notice, and no specific form of notice in such proceedings is necessarily essential, and we think the contention made is possessed of but little merit, coming from the source from which it does. It is not a matter of any concern, so far as appellants are concerned, to look after and protect the rights of the Okmulgee Producing & Refining Company, who in fact is their adversary in this controversy, and no complaint has been made on the part of the company; the application in this cause was lodged by the Henryetta Gas Company and the Henryetta Public Service Company, subsidiaries of the Okmulgee Producing & Refining Company, owned, operated and controlled by said company and in reality one and the same. The record discloses that the officers and attorneys of the Okmulgee Producing & Refining Company had full knowledge of the proceedings, testified at the hearing, were present, conducting and directing the same, and in view of these facts, and the law concerning same which has been definitely fixed and established upon good reason and justice, we think any further discussion of this subject unnecessary. We might, however, add further that proceedings of this character are legislative in their nature,

as well as judicial, and that the rules governing the procedure in courts of law are not necessarily applicable or applied with such strictness as they are in lawsuits.

In the case of Prentis v. Atlantic Coast Line Co., 211 U. S. 210, the Supreme Court of the United States, when considering a provision of the Constitution of Virginia, which created the Corporation Commission of that state and defines its powers and duties, said:

"The establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial in kind."

The same rule is followed and announced in the case of Grand Trunk Western Railway Co. v. Railway Commission of Indiana, 221 U. S. 400, and by this court in Atchison, T. & S. F. Ry. Co. v. State, 23 Okla. 510, 101 Pac. 262, and in the case of Guthrie Gas & Electric Co. v. Board of Education, supra.

Appellants' second contention is that the contract entered into by the smelters and other industries of similar nature with Smith and Swan, the original parties in this transaction, was a private agreement for the surplus gas, after the domestic patrons had been supplied, in which the public had no concern, and the fact that the smelter gas is carried by a public service company does not of itself alone warrant the Commission to assume jurisdiction.

Appellees in their brief cite the case of Raymond Lumber Co. v. Raymond Light & Water Co. (Wash.) 159 Pac. 133, which strikes us as being similar to the case at bar in this respect. In that case the light and water company entered into a contract with a certain lumber company to supply the latter with its requirements of water at a certain rate, and the contract was alleged to have been made to induce the lumber company to locate in the town. Subsequently the Public Service Commission of the state of Washington, finding that the light and water company's returns were not adequate, and that the lumber company was getting its water at a rate that was discriminatory, the Commission, without notice to the lumber company, ordered the light and water company to charge and collect from the lumber company the regular schedule of rates for water; thereafter, the lumber company paid the regular tariff or rate for water under protest, having received notice from the light and water company of the order, and sued the light and water company to recover the difference which it had thus paid, and what it would have had to pay at the contract rate, amounting to something more than $2,000, and to enjoin the light and water company from refusing to supply it with water at the contract rate. The Supreme Court of Washington denied the injunction and denied the right to recover the amount paid under protest, holding that the Commission had the right to fix the rate, without regard to the contract and without notice to the lumber company, and we discover nothing in the provisions of our Constitution and the statutes heretofore referred to which would prevent the application of the same rule in this jurisdiction.

In City of Bartlesville v. Corporation Commission, 82 Okla. 160, 199 Pac. 396, this court followed the same rule:

"Rate making being a legislative power, notice to parties affected by an order of the Corporation Commission temporarily increasing gas rates upon application of a public service company need not be given unless specifically required by the statute."

A discussion of a somewhat similar question is found in Home Telephone Co. v. Los Angeles, 211 U. S. 265, and Munn v. Ill., 94 U. S. 113, wherein it is held that a corporation or individual cannot divest the state of its power to regulate and control public utilities by entering into contracts; same rule is followed in the case of Hudson County Water Co. v. McCarter, 209 U. S. 349, and in Philadelphia, B. & W. R. Co. v. Schubert, 224 U. S. 603, and many other authorities there cited.

Appellants also make the contention that the contracts made with Smith and Swan, the original owners of the properties involved, for gas, were private contracts; that the contracts were not made with Smith and Swan as persons engaged in public services or in the operation of a public utility, but with Smith and Swan in their private and individual capacity as a private copartnership, and that the contracts were not for a public service but were private purchases of natural gas, and that the Corporation Commission has no jurisdiction over same. As heretofore stated, all of these companies and the properties involved were owned, controlled, and operated by Smith and Swan, and were owned and operated in the same manner by the Okmulgee Producing & Refining Company, the purchasers from Smith and Swan. Appellants attempt to segregate and separate the various properties and contend that the pipe line and distributing system constitutes a public utility, and that the gas and gas wells were the private property of the individuals, Smith and Swan, and, by reason of the transfer, the property of the Okmulgee Producing &

Refining Company at the time of the institution of these proceedings.

In the case of Munn v. Illinois, supra, the court said, in discussing a similar question:

"This brings us to inquire as to the principles upon which this power of regulation rests, in order that we may determine what is within and what is without its operative effect. Looking, then, to the common law, from whence came the right which the Constitution protects, we find that when private property is 'affected with a public interest, it ceases to be "juris privati" only.' This was said by Lord Chief Justice Hale more than two hundred years ago, in his treatise De Portibus Maris, 1 Harg. Law Tracts 78, and has been accepted without objection as an essential element in the law of property ever since. Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created."

Under section 11032, Comp. St. 1921, an industry such as we are here dealing with is declared to be a public utility and subject to the jurisdiction and control of the Corporation Commission of this state, and it having once become subject to the jurisdiction of the Corporation Commission, it can not extricate itself from that jurisdiction in whole or in part, so long as it engages in the business of a public utility.

A discussion of this principle will be found in the cases of Fidelity Title & Trust Co. v. Kansas Natural Gas Co., 219 Fed. 614. Leavitt v. Lassen Irrigation Co. (Cal.) 106 Pac. 404, and many authorities therein cited, and in the case of Limoneira Co. v. Railway Company (Cal.) 162 Pac. 1033, wherein the court held:

"A mutual water company, supplying water to its stockholders to be used on their lands, which takes its water from a corporation operating a ditch as a public utility, occupies the same position as any other consumer taking water from the ditch, and the rental charges against it are equally subject to public regulation.

"The exercise by the state of the power reserved in its Constitution to regulate the rental charged for the distribution of water after the execution of a rental contract does not impair the obligation of the contract, within the meaning of the federal Constitution, where the state has not surrendered to the public utility involved by the contract any portion of its regulatory power.

"A corporation, engaged as a public utility in appropriating water for distribution and sale, cannot, by reserving from a conveyance of all its property the right to water used on the lands of its sole stockholder, with right of way for the flow of such water through the ditch, divest that water of the public use imposed on it by the Constitution, or deprive the railroad commission of power to fix the charges for the delivery of the water."

In Clear Creek Oil & Gas Co. v. Ft. Smith Smelter Co., P. U. R. 1920 E. 160, the following rule is announced in the syllabus of the case:

"A company incorporated 'for the purpose of sinking wells, boring for, providing, and transporting crude oil and natural gas, coal, asphalt, and other minerals,' and which is actively engaged in carrying on the business for which it was incorporated, is a public utility.

"That a natural gas producing company may not have been a public utility at the time it entered into a contract to furnish gas to smelters, is immaterial upon the question of the jurisdiction of the Arkansas Commission to regulate its rates, where it furnished gas to pipe lines for lighting, heat, and power purposes, since such business is imbued with a public interest and, by statute, has been made subject to the jurisdiction of the Commission.

"The Arkansas Commission has power to increase or decrease rates fixed in contract for natural gas furnished by a producing company to smelters, although, at the time of the contract, the parties believed that the business was not subject to regulation by the state."

Innumerable authorities are cited holding that commissions clothed with the power by the state Legislature, such as the Corporation Commission of Oklahoma is vested with, have the power and authority to regulate and control the rates, increase or decrease the same, of all public utilities, and that such commissions are in no wise hampered or prevented from exercising such power and authority by reason of any contracts entered into by the parties concerned, either prior to, or subsequent to, the Legislature creating the commissions and defining their powers and duties.

The case of Clarksburg Light & Heat Co. v. Public Service Commission, recently decided by the West Virginia Court of Appeals, P. U. R. 1920A, 639, 100 S. E. 551, is a case very much in point and quoted by the court in the case of Clear Creek Oil & Gas Co. v. Ft. Smith Smelter Co., supra, from which we quote the following:

"Does the business of the petitioner so affect the interest of the community as to

make it subject to public regulation, so far as it furnishes gas to manufacturing enterprises? It must be borne in mind that petitioner is furnishing large quantities of gas, not only to these private enterprises, but to all the people of Clarksburg desiring it. It is subject to public regulation in supplying its product to one class of consumers, such as domestic consumers, or to schoolhouses or public buildings, it cannot very well be conceived how the supplying of its product to other consumers in the same community can be placed upon a different footing. It is argued that the business, in which these manufacturing consumers are engaged, is entirely private; that the public has no interest therein, no power to regulate it or control it; and this is entirely true, but that argument applies with equal force to every private residence in the city. The public has no right or power to control the conduct of family life. It is as much, if not more, a private use of gas, when it is consumed by a domestic consumer, as when it is consumed by a manufacturing plant. The use made of the substance by the consumer is not the test. If such were the case, then the public service would only extend to such of the petitioner's product as is furnished to purely public institutions, in which class might be placed courthouses, schoolhouses, and public buildings of that character, and all other of its business would be free from regulation by the public authorities."

A very extensive and exhaustive discussion may be found in this case and it appears to be a parallel case to the case at bar, and clearly holds that a public utility cannot be one-half public and one-half private, that it will not be allowed to conduct a portion of its business under public rules and carry on a portion of the same business under private contracts, and as a private business, and as said in the opinion, such contracts would result disastrously to the public and would enable the public utilities to avoid the full force and effect of the law, and would authorize unjust discrimination between patrons of the company, and would enable the company to cast upon their domestic patrons, and upon that portion of its business, conducted as a public utility, subject to the control, regulations, and jurisdiction of the Corporation Commission, the burden of the entire industry and result in great injustice to the public, or vice versa as the case might be. Individuals and corporations which are recognized as public utilities under the law of eminent domain may cross public streets and thoroughfares, enter upon private property, construct, maintain, and operate all of the instrumentalities necessary for the maintenance of their business, and when they clothe themselves with the habiliments of a public utility, they necessarily subject themselves to all of the laws applicable to such institutions and industries and cannot avoid the same in the manner sought by the appellants in this case. We are therefore inclined to the opinion that the Corporation Commission of this state had and acquired jurisdiction to render the order made, and we therefore recommend that the same be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 28 C. J. p. 576. (2) 28 C. J. p. 576. (3) 28 C. J. p. 576.